United States Court of Appeals,

Fifth Circuit.

No. 95-10491.

In the Matter of MAPLE MORTGAGE, INC., Debtor.

John James JENKINS, Trustee for Maple Mortgage, Inc., Appellant,

v.

CHASE HOME MORTGAGE CORPORATION, Appellee.

April 30, 1996.

Appeal from the United States District Court for the Northern District of Texas.

Before REYNALDO G. GARZA, WIENER and STEWART, Circuit Judges.

STEWART, Circuit Judge:

Jenkins, trustee for Maple Mortgage (Maple) appeals from a judgment dismissing its claim that a payment to Chase Home Mortgage Corporation (Chase) was either preferential or fraudulent and thus avoidable under 11 U.S.C. § 547 or 11 U.S.C. § 548. Because we conclude that Maple had only legal title to the funds in question and no equitable interest in them, we AFFIRM the district court's grant of summary judgment to Chase.

FACTS

On December 2, 1988, debtor Maple entered into a Mortgage Servicing Purchase and Sale Agreement with Chase. Maple agreed to purchase the servicing rights to a portfolio of 7,140 single-family mortgage loans. The purchase price for the servicing rights was an amount equal to 1.21% of the aggregate unpaid principal balances of the mortgages and was later calculated as $4,573,159 ($4.5 million) on a principal balance of $377,947,054. Chase did *not* own the

underlying mortgages and conveyed only the servicing rights to the mortgages included in the portfolio.

The Agreement provided that, prior to the sale, Chase was required to perform certain servicing duties including keeping a complete, accurate, and separate account of all sums collected by it from the mortgagors. Chase was also required to deposit all funds received on account of the mortgages in a segregated trust or custodial demand deposit account and maintain records in conformance with applicable rules and regulations of the Government National Mortgage Association ("GNMA") and the Federal Home Loan Mortgage Corporation ("FHLMC").

The payment of the $4.5 million purchase price was made pursuant to the Agreement as follows. First, Maple's parent company, Western Community Money Centre of Alberta, Ltd. ("WesCom"), executed a debenture to Chase to secure payment of the purchase price. Then, in accordance with the Agreement, the following items were wired from Chase to Maple's account at Fidelity National Bank on February 3, 1989: (1) mortgage payments, (2) tax and insurance escrows, (3) outstanding receivables, and (4) unearned fees. The total amount of these funds transferred from Chase to Maple was approximately $9.7 million. Immediately afterwards, Maple wire transferred back to Chase the $4.5 million purchase price from the same Fidelity account. Once Chase received the purchase price, it stamped the WesCom debenture "canceled" and returned it to WesCom. As of the transfer date, Maple had not taken any action to service the mortgages; therefore, Maple had

2

not earned any servicing fees relating to those mortgages.

Prior to the wire transfer of the $9.7 million, Maple's Fidelity account contained a balance of $28,400.59. The only transactions made from this account on February 3, 1989 were the two wire transfers to and from Chase. Less than forty-five days after the Chase-Maple transfer, on March 17, 1989, Maple filed its petition for bankruptcy.

John Jenkins, trustee for Maple ("Trustee"), brought an adversary action to avoid the $4.5 million transfer on the theory that it was either a preferential transfer under 11 U.S.C. § 547(a) or a fraudulent transfer under 11 U.S.C. § 548(a). Chase filed a motion for summary judgment, arguing that the $4.5 million conveyed was not "an interest of the debtor in property" and thus that the Trustee had failed to establish the existence of an element necessary to both claims.

The bankruptcy court agreed with Chase's argument, and granted summary judgment in favor of Chase. The court held that the Trustee had failed to establish that the property transferred from Maple to Chase was "an interest of the debtor in property" because neither Chase nor Maple ever had equitable ownership of these funds. The district court affirmed, and Trustee appeals.

## DISCUSSION

*Standard of Review*

Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Questions of law are reviewed

3

*de novo.  In re Southmark,* 49 F.3d 1111, 1114 (5th Cir.1995). Summary judgment must be granted to the nonmovant if the movant cannot make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

"*An interest of the Debtor in Property* "

A trustee in bankruptcy can avoid a transfer that is either preferential, as defined by § 547(b) or fraudulent, as defined by § 548(a).  But in either case, the transfer must be "of an interest of the debtor in property."  11 U.S.C. §§ 547(b), 548(a).  The reach of this avoidance power is limited to transfers of "property of the debtor."  *Begier v. IRS,* 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990).

The scope of the debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Section 541(d) further explains that where the debtor holds only legal title and not an equitable interest, the interest becomes property of the estate only to the extent of the debtor's legal title.  "Because a debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate.' Nor is such an equitable interest "property of the debtor' for purposes of § 547(b)."  *Begier,* 496 U.S. at 59, 110 S.Ct. at 2263.

> The primary consideration in determining if funds are property of the debtor's estate is whether the payment of those funds diminished the resources from which the debtor's creditors could have sought payment.

4

Conversely, if funds cannot be used to pay the debtor's creditors, then they generally are not deemed an asset of the debtor's estate for preference purposes. A common example is when a debtor holds funds in trust for another.

*In re Southmark,* 49 F.3d 1111, 1117 (5th Cir.1995).

Based on the facts of the transaction and the Agreement, both the district court and the bankruptcy court determined that because Chase neither owned nor attempted to transfer the mortgages themselves, neither Chase nor Maple ever held the equitable ownership of the funds transferred from Chase to Maple. Therefore, the transfer of the $4.5 million to Chase did not diminish Maple's estate, and was not avoidable as either a preferential or a fraudulent transfer.

*The Burden of Proof*

The Trustee argues that *In re Southmark* establishes a presumption that the Debtor's possession of funds in a bank account in its name, coupled with the unfettered discretion to pay creditors of its own choosing, demonstrates a sufficient "interest of the debtor in property" for purposes of preference law. *See In re Southmark,* 49 F.3d 1111, 1116 (5th Cir.1995). Furthermore, the Trustee argues that, once it established that Maple had legal title to the funds, Chase had the burden of establishing that it did not have equitable title to the funds that had been deposited in its Fidelity account, and that the funds constituted a "trust." The Trustee insists that Chase failed to meet this burden.

The District Court and the bankruptcy court properly placed the burden of proof on the Trustee because 11 U.S.C. § 547(g) specifically provides that "the trustee has the burden of proving

5

the avoidability of a [preferential] transfer."  Similarly, the trustee has the burden of proving the elements of a fraudulent transfer.  *See In re McConnell,* 934 F.2d 662, 665 n. 1 (5th Cir.1991).  However, the Trustee is correct in asserting that the burden of proof was reallocated in *Southmark.  See Southmark,* 49 F.3d at 1118.

At issue in *Southmark* was a payroll check drawn from a commingled account.  *Southmark,* 49 F.3d at 1113-14.  The account, which was owned by the debtor company, contained commingled funds belonging to the debtor's parent and affiliate companies, as well as its own funds.  *Id.*  The debtor company had complete control over the account and could have totally depleted it to pay its own creditors without regard to any other subsidiary's contribution to or balance remaining in the account. *Id.* Consequently, this Court held that when property that otherwise would be considered part of a debtor's estate is alleged to be held in trust for another, "[t]he burden of establishing the existence of the constructive trust rests on the claimant." *Id.,* 49 F.3d at 1118.

In the case *sub judice,* however, both Chase and Maple were required to service the mortgages in accordance with applicable regulations and prudent mortgage banking practices.  They were required to timely collect all payments due under the terms of each mortgage, and were required to keep a complete, accurate, and separate account of each mortgage and its appropriate tax and insurance escrows.  All funds received on account of the mortgages were to be kept in a segregated trust or custodial demand deposit

account, and detailed records of each individual mortgage were to be maintained in a manner complying with applicable federal law. From the funds in the segregated trust or custodial demand account, both Chase and Maple were required to timely pay the proper parties, including taxes, insurance, and all amounts of principal and interest collected under each mortgage. Thus, while Maple had discretion over the account itself, any presumption that it had unfettered discretion over funds at issue in the transfer was clearly rebutted by the specific terms of the Agreement.

*Property held for the benefit of another*

In *Southmark,* this Court distinguished generally between two types of "equitable interests." In a contractual relationship, the creditor may possess an "equitable claim" to property actually owned by the debtor, but there is no division of ownership or title in the property at issue, and the debtor is entirely free to dispose of the property as he sees fit. In a trust relationship, by contrast, the law actually divides the bundle of rights in the property, and only when legal title to the property is held by the bankrupt in trust for the benefit of another is the property properly excluded from the bankrupt's estate. *Southmark,* 49 F.3d at 1117. For example, in *Begier,* the Supreme Court found no preference where funds were held in trust for the benefit of another. The Court found that the money the debtor paid to the IRS out of its general operating fund as a payment of withholding taxes was a statute-based trust for the benefit of the IRS, and not "property of the debtor." *Begier,* 496 U.S. at 62, 110 S.Ct. at

7

2264.

In contrast to *Begier* where federal law established a statutory trust, in the absence of controlling federal bankruptcy law, the substantive nature of the property rights held by a bankrupt and its creditors is defined by state law. *See Matter of Haber Oil Co.,* 12 F.3d 426, 435 (5th Cir.1994) (cited in *Southmark,* 49 F.3d at 1118 n. 28). Under the usual version of the constructive trust doctrine, one who has been unjustly enriched at another's expense is treated under state law much like a trustee, holding legal title for the injured party's benefit. *Haber,* 12 F.3d at 435. Looking at Texas state law to determine whether the *Southmark* creditor had adequately demonstrated that the property at issue was held in trust for another, this Court found that there was no evidence of unjust enrichment, and no evidence of either an actual or a constructive trust. *Southmark,* 49 F.3d at 1118.

Unlike *Southmark,* however, the conclusion in this case that Maple had only legal title to the transferred funds does not depend on the remedy of constructive trust, but rather on the terms of the contract between Maple and Chase. Under Texas law, an interpretation of a contract is a question of law, and if a contract is written so that a court may properly give it a certain definite legal meaning or interpretation, it is not ambiguous. *Threadgill v. Farmers Ins. Exchange,* 912 S.W.2d 264 (Tex.App.—Dallas 1995); *see Matter of Oxford Management, Inc.,* 4 F.3d 1329, 1334 (5th Cir.1993). Under the terms of the Agreement it is readily apparent that neither Chase nor Maple owned the

8

underlying mortgages, and that the funds consisted of mortgage payments, net escrows, outstanding receivables, and unearned fees. As of the transfer date, Maple had not yet even earned any of the servicing fees for which it had contracted; therefore, while Maple had legal title to the funds, it was holding those funds for the benefit of those to whom the money was owed, and therefore, Maple had no equitable interest in the funds transferred. As Maple had no equitable interest in the funds transferred to Chase, that transfer cannot be avoided under either § 547 or § 548 of the Bankruptcy Code, and thus Chase was properly granted summary judgment as a matter of law. AFFIRMED.