David D. SWINEHART, Appellant,

v.

STUBBEMAN, McRAE, SEALY, LAUGHLIN & BROWDER, INC., William E. Schweinle, Jr., and Ellison, Schweinle & Parrish, P.C., Appellees.

No. 14–99–00717–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 7, 2001.

Rehearing Overruled June 7, 2001.

Thomas G. Bousquet, Houston, for appellants.

David Wayne Claywater, Sam W. Cruse, Jr., Richard W. Avery, Juliette E. Daniels, Houston, for appellees.

Panel consists of Justices YATES, WITTIG, and FROST.

## OPINION ON REHEARING

FROST, Justice.

The motions for rehearing filed by appellant, David D. Swinehart, and appellees, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., William E. Schweinle, Jr., and Ellison, Schweinle & Parrish, P.C., are overruled. This court's opinion issued on March 8, 2001, is withdrawn, and this opinion is substituted in its place.

Appellant, David D. Swinehart, appeals the summary judgment entered in favor of his former attorneys, appellees, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Ellison, Schweinle & Parrish, P.C., and William E. Schweinle, Jr., on legal malpractice claims arising out of appellees' handling of an underlying state court lawsuit and related bankruptcy proceedings.[1] We affirm, in part, and reverse and remand, in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Swinehart, a petroleum geologist, entered into four contracts with Haber Oil Co., Inc., a corporation involved in the acquisition, promotion, and development of oil and gas leases. Under these contracts, Swinehart agreed to locate, evaluate, and recommend oil and gas drilling prospects to Haber Oil. The third contract entered into on July 9, 1982, provided that Swinehart was to receive a monthly retainer of $8,000 and fifty percent of Haber Oil's "carried working interest and/or other retained revenue interest retained that is by Haber after sale to investors or other party of prospect solicited, reviewed and recommend by Swinehart." Drilling yielded significant amounts of oil and gas on some of the leases. While Haber Oil paid Swinehart his retainer and assigned to him his percentage interest in some of the wells pursuant to the third contract, Haber Oil failed to assign to Swinehart all of the interests to which Swinehart claimed he was entitled. Instead, Haber Oil sent Swinehart notice that it was terminating their contractual relationship.

### A. Underlying Litigation

Swinehart filed suit against Haber Oil in state district court, seeking the imposition

---

1. Swinehart retained the law firm Stubbeman, McRae, Sealy, Laughlin & Browder to file suit against Haber Oil. Appellee, William E. Schweinle, a member of the firm, acted as lead counsel, instituting a lawsuit on behalf of Swinehart in the district court of Fort Bend County, Texas. While the litigation was pending, Schweinle left the Stubbeman, McRae firm and became a named member of the law firm of Ellison, Schweinle & Parrish, P.C.

of a constructive trust on the unassigned mineral interests on the basis of Haber Oil's alleged breach of a confidential relationship with Swinehart. He also sought an accounting and compensatory and punitive damages. Swinehart joined as defendants the purchasers of the oil and gas produced from wells on the unassigned leases. The trial court ordered these purchasers to place funds in an escrow account until the ownership of the disputed leases could be determined.

While Swinehart's lawsuit against Haber Oil was pending in state court, Haber Oil filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code. At that time, appellee, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., represented Swinehart and filed on his behalf a proof of claim in the bankruptcy case, listing Swinehart as an unsecured creditor seeking damages from Haber Oil in the amount of $2,300,000. The proof of claim did not expressly provide that Swinehart held a security interest or an · equitable interest, but copies of Swinehart's pleadings from the state lawsuit were attached to the proof of claim. Haber Oil filed an objection to Swinehart's claim, alleging that the claim was "disputed, contingent and unliquidated," and also that more than enough funds had been placed in escrow to satisfy Swinehart's claim. A few days before the bankruptcy court confirmation hearing on Haber Oil's reorganization plan, Swinehart filed an objection to the plan on the basis that the plan would discharge his state court claim for a constructive trust without the adjudication of that claim, and would further allow Haber Oil or its successors to hold title to mineral interests belonging to Swinehart.[2]

The bankruptcy court approved Haber Oil's reorganization plan. Under the plan, a third party was to advance to Haber Oil the cash required to fund the plan in return for a security interest in all property in the Haber Oil bankruptcy estate. The plan did not specifically address Swinehart's claim, but there was a handwritten notation by the bankruptcy judge at the bottom of the approval order stating that "Haber Oil will not seek to withdraw the funds held in escrow on account of the Swinehart [claim]." The post-confirmation committee filed an objection to Swinehart's claim in the bankruptcy court. In a trial memorandum filed in support of his response to the post-confirmation committee's objection, Swinehart alleged, for the first time, the existence of a confidential relationship between Haber Oil and Swinehart in connection with their joint activities. He requested the imposition of a constructive trust on the disputed leases and an award of either the ownership interest in the properties or, alternatively, the fair market value of the leases.

The bankruptcy court held several hearings on the post-confirmation committee's objections and Swinehart's response. The bankruptcy court first concluded Swinehart had an ownership interest in the disputed leases pursuant to the third contract. Finding that Haber Oil had already sold those mineral interests to a third party, the bankruptcy court deemed a sale of the disputed leases from Swinehart back to Haber Oil, and awarded Swinehart $971,689 for the value . of those interests. The bankruptcy court further found Swinehart owned the escrowed funds in the amount of $410,348, then being held in the state court registry, and awarded those funds to Swinehart. The bankrupt-

---

**2.** Swinehart claims appellees, against his express instructions, withdrew his objection to the plan.

cy court also found other suspended funds which were not in escrow, but were attributable to the disputed leases, to be $719,242, and the interest on those funds to be $277,490, totaling $996,732, of which Swinehart was awarded $318,954 as a Class 5 unsecured claimant under the reorganization plan. The United States District Court for the Northern District of Texas affirmed the orders of the bankruptcy court.

The United States Fifth Circuit Court of Appeals reversed the award of the constructive trust of the full value of the disputed leases and the funds held in escrow in the state court lawsuit. *See In re Haber Oil Co.*, 12 F.3d 426 (5th Cir.1994). The Fifth Circuit noted numerous problems with Swinehart's claims in the bankruptcy proceedings. First, the applicable rules of bankruptcy procedure required the initiation of an adversary proceeding for Swinehart's claim of an equitable interest in the disputed leases, but the Fifth Circuit determined that Swinehart had not complied with those rules. *Id.* at 437–38. The Fifth Circuit further observed that "[f]rom his very involvement in the bankruptcy proceedings, Swinehart's conduct was consistent with that of an unsecured creditor.... Not until literally the eve of the hearing ... did Swinehart attempt to make his state constructive trust claim an issue in the federal bankruptcy proceedings." *Id.* at 439.

After reviewing the record with regard to Swinehart's allegation of fraud in support of his claim for a constructive trust, the Fifth Circuit found Swinehart had not established fraud on the part of Haber Oil. *Id.* at 441–42. Further, after noting that a constructive trust can only attach to a specific *res*, or some identifiable property that can be traced back to the original *res* acquired by fraud, the Fifth Circuit concluded Swinehart had failed to satisfy the tracing requirements inherent in the assertion of a constructive trust with respect to Swinehart's real property interests. *Id.* With regard to the bankruptcy court's decision to award Swinehart the funds paid into the registry of the state court, the Fifth Circuit found Swinehart's entitlement to those funds depended upon his status as the "owner" of the interests in the disputed leases, but that he had not established through proper pleadings and proof that he was a constructive trust beneficiary, or anything other than an unsecured creditor. *Id.* After the Fifth Circuit reversed his award in the bankruptcy proceedings, Swinehart settled the state court lawsuit against Haber Oil for $622,000, which was the amount of the funds on deposit in the escrow account.

### B. Claims Against Appellees

In this legal malpractice case, Swinehart asserted claims for negligence, gross negligence, breach of warranty, breach of contract, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA") in connection with appellees' legal representation of him in the state court lawsuit and bankruptcy proceedings. Specifically, Swinehart contends his failure to recover an ownership interest in the disputed leases was the result of the following alleged errors in appellees' representation of him: (1) failure to file a proof of claim identifying him as a secured creditor; (2) the unauthorized withdrawal of Swinehart's objections to the plan of reorganization; (3) failure to pursue an adversary proceeding in bankruptcy court; (4) failure to pursue the constructive trust in state court; and (5) failure to file an application for relief from stay in bankruptcy court.

Appellees moved for summary judgment on Swinehart's negligence and gross negligence claims on the element of causation,

i.e., that Swinehart could not have recovered either his claimed interest in the disputed leases or, alternatively, the value of those leases under the third contract because: (1) the third contract was not enforceable under the statute of frauds, and (2) the contract right Swinehart sought to enforce constituted a "claim" under bankruptcy law, not an ownership interest, thereby making Swinehart an unsecured creditor, entitling him to a 31% pro-rata share of the property in the bankruptcy estate. Appellees also moved for summary judgment on the DTPA and breach of warranty claims on the causation element, and the breach of contract claim on the ground that legal malpractice claims sound in tort, not contract. Appellees, however, did not assert in their motion for summary judgment that Swinehart could not have recovered on his constructive trust claim in the underlying suit against Haber Oil. The trial court granted summary judgment on Swinehart's claims for negligence, gross negligence, DTPA violations, breach of warranty, and breach of contract. Swinehart appeals the granting of summary judgment on his negligence and gross negligence claims.[3]

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

■ To prevail on a motion for summary judgment, the defendant must establish that no material fact issue exists and it is entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex.1999). Once the defendant establishes that no genuine issue of material fact exists regarding an element of the

plaintiff's claim, the plaintiff must present competent summary judgment evidence raising a fact issue on that element. *Guest v. Cochran*, 993 S.W.2d 397, 401 (Tex. App.—Houston [14th Dist.] 1999, no pet.). In conducting this review, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999).

## III. ANALYSIS

■ An action for legal malpractice is based on negligence. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex.1989); *Campbell v.. Doherty*, 899 S.W.2d 395, 397 (Tex. App.—Houston [14th Dist.] 1995, writ denied). To recover on a claim for legal malpractice, the plaintiff must establish: (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred. *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex.1995). A lawyer in Texas is held to the standard of care which would have been exercised by a reasonably prudent attorney, based on the information the attorney had at the time of the alleged act of negligence. *Cosgrove*, 774 S.W.2d at 664. In the usual legal malpractice case, the attorney's negligence causes his client to lose a cause of action or defense. *Rodriguez v. Klein*, 960 S.W.2d 179, 185 (Tex. App.—Corpus Christi 1997, no pet.). To prove a cause of action for legal malpractice, the plaintiff must establish that he would have prevailed on the underlying cause of action and would have been enti-

---

**3.** Swinehart does not appeal the summary judgment on his claims for DTPA violations, breach of warranty, and breach of contract. Swinehart also asserted a claim against appellees for breach of fiduciary duty with respect to appellees' simultaneous representation of Shell Oil and him in the underlying litigation. The trial court denied summary judgment on Swinehart's breach of fiduciary duty claim, which it had severed from the other claims, and made the summary judgment order on Swinehart's negligence claims a final judgment for purposes of appeal.

tled to judgment but for his attorney's negligence. *Schlager v. Clements*, 939 S.W.2d 183, 186–87 (Tex.App.—Houston [14th Dist.] 1996, writ denied). This is referred to as the "suit within a suit" requirement. *Ballesteros v. Jones*, 985 S.W.2d 485, 489 (Tex.App.—San Antonio 1998, pet. denied); *Greathouse v. McConnell*, 982 S.W.2d 165, 173 (Tex.App.—Houston [1st Dist.] 1998, pet. denied).

■ Although proximate cause is usually a question of fact in a legal malpractice action, it may be determined as a matter of law if the circumstances are such that reasonable minds could not arrive at a different conclusion. *Schlager*, 939 S.W.2d at 187; *Mackie v. McKenzie*, 900 S.W.2d 445, 449 (Tex.App.—Texarkana 1995, writ denied). Summary judgment may be proper if it is shown that the attorney's act or omission was not the cause of any damages to the client. *Schlager*, 939 S.W.2d at 187; *Rodriguez*, 960 S.W.2d at 184.

### A. Statute of Frauds

■ To negate the causation element of the negligence and gross negligence claims, appellees asserted that the third contract was not enforceable because it did not satisfy the statute of frauds due to lack of a sufficient property description. To comply with the statute of frauds, the contract must be in writing and signed by the party to be charged with the agreement. TEX. BUS. & COM.CODE ANN. § 26.01(a) (Vernon 1987). A contract for the conveyance of real property must comply with the statute of frauds to be enforceable. *Lewis v. Adams*, 979 S.W.2d 831, 834 (Tex.App.—Houston [14th Dist.] 1998, no pet.). A contract for the transfer or assignment of an interest in an oil and gas lease is treated as a real property interest and, therefore, is subject to the statute of frauds. *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex.1982); *Hill v.*

*Heritage Resources, Inc.*, 964 S.W.2d 89, 134 (Tex.App.—El Paso 1997, pet denied); *EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 267 (Tex.App.—Corpus Christi 1994, writ denied); *Vela v. Pennzoil Producing Co.*, 723 S.W.2d 199, 206 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.).

Swinehart contends the statute of frauds would not have been a bar to recovery of the unassigned mineral interests because: (1) Haber Oil did not raise the statute of frauds as an affirmative defense in the underlying state court litigation; (2) the transfer of the mineral interests was merely incidental to the agreement for geological services between Haber Oil and Swinehart; (3) the third contract, when considered with other writings, sufficiently describes the disputed leases; (4) the statute of frauds does not preclude the imposition of a constructive trust; and (5) the doctrine of partial performance removes the third contract from the statute of frauds.

#### 1. Waiver

■ Swinehart raises two waiver arguments in response to the statute of frauds. First, he argues the statute of frauds does not bar his malpractice claims against appellees because it was waived. The statute of frauds is an affirmative defense to the enforcement of a contract which must be pleaded or it is waived. TEX.R.CIV.P. 94; *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 960 S.W.2d 343, 353 (Tex.App.—Corpus Christi 1997), *pet. denied*, 989 S.W.2d 360 (Tex.1998) (per curiam). Swinehart argues that because Haber Oil never pleaded the statute of frauds as an affirmative defense in the underlying state court action, appellees cannot assert it as a defense for the first time in the legal malpractice action.

■ We disagree with Swinehart's contention. First, Swinehart never sought specific performance of the third contract, but, instead, sought recovery of an ownership interest in the disputed leases through the imposition of a constructive trust. Consequently, Swinehart never asserted a claim against which Haber Oil would have been required to plead the statute of frauds as an affirmative defense. *See generally Gerstacker v. Blum Consulting Eng'rs, Inc.*, 884 S.W.2d 845, 849 (Tex. App.—Dallas 1994, writ denied) (stating the statute of frauds is affirmative defense to the enforcement of contract). Second, Swinehart has not alleged in the malpractice action that appellees should have pursued specific performance based on Haber Oil's breach of the third contract. Third, we know of no authority to support Swinehart's position, i.e., that an attorney in a legal malpractice suit is limited to the same affirmative defenses raised by the defendant to the plaintiff's claims in the underlying suit. An attorney's defense to a legal malpractice claim should not rest on the underlying defendant's handling of its own defense. Thus, the fact that Haber Oil did not plead the statute of frauds as an affirmative defense in the underlying lawsuit does not preclude appellees from raising it to negate causation in a subsequent legal malpractice action brought by Swinehart.

■ Swinehart also claims appellees waived the statute of frauds by failing to plead the affirmative defense in this legal malpractice action. The statute of frauds is not an affirmative defense to claims sounding in negligence and gross negligence. Understandably, appellees did not assert the statute of frauds as an affirmative defense to Swinehart's negligence and gross negligence claims; rather, they raised the statute of frauds to negate causation. Therefore, Swinehart's argument is without merit.

## 2. Primary Purpose of the Third Contract

■ Swinehart also asserts that the statute of frauds it is not applicable to the third contract. Swinehart does not contend that the assignment of the mineral interests is not a transfer of real estate subject to the statute of frauds; instead, he argues the statute of frauds is not applicable because the transfer of those mineral interests was only incidental to the primary agreement, which was based on the acquisition of geological information.

In support of his contention, Swinehart relies on *Hydrocarbon Horizons, Inc. v. Pecos Dev. Corp.*, 797 S.W.2d 265 (Tex. App.—Corpus Christi 1990), *writ denied*, 803 S.W.2d 266 (Tex.1991) (per curiam). In that case, Hydrocarbon entered into an agreement with Pecos, in which Hydrocarbon agreed to show two prospective leases to Pecos; if Pecos wanted to acquire either lease, Pecos would pay Hydrocarbon a finder's fee and deliver an overriding royalty interest in each lease. *Id.* at 266. Hydrocarbon sued Pecos for breach of contract and constructive trust, alleging Pecos had acquired one of the leases without paying Hydrocarbon its finder's fee or tendering the overriding royalty interest. *Id.* Pecos moved for summary judgment on the ground that the letter agreement was not enforceable under the statute of frauds because it did not sufficiently describe the land in question. *Id.*

The Corpus Christi Court of Appeals rejected Pecos' contention that the agreement to transfer the overriding royalty interest constituted a sale of real estate subject to the statute of frauds. *Id.* Instead, the court determined the primary purpose of the contract was for the sale of geological information, and "the Statute of

Frauds is not implicated merely because a real estate transaction may be incidentally involved." *Id.* at 267 (citing *Bridewell v. Pritchett*, 562 S.W.2d 956, 958 (Tex.Civ. App.—Fort Worth 1978, writ ref'd n.r.e.)).

We do not agree with Swinehart that the transfer of the working interests in the oil and gas leases under the third contract was merely incidental to a larger agreement. Considering all the terms of the third contract, it is clear that the primary purpose of the contract was to secure interests in oil and gas leases. The gathering of geological information was merely a means to an end, that is, to locate prospective leases and to ultimately obtain mineral interests in those leases. We conclude the primary purpose of the third contract was to acquire mineral interests and is subject to the statute of frauds.

### 3. Description of the Disputed Leases

Swinehart further argues that even if the statute of frauds is applicable in this case, it does not bar recovery on the basis of an insufficient property description. Although he acknowledges that the third contract does not contain property descriptions of the leases to be acquired, Swinehart contends the written instruments prepared after the parties signed the third contract describe the disputed properties sufficiently to satisfy the requirements of the statute of frauds.

To satisfy the statute of frauds, a contract of conveyance must furnish within itself or by reference to other identified writings then in existence, the means or data by which the particular land to be conveyed may be identified with specific certainty. *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex.1983); *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex.1972); *Matney v. Odom*, 147 Tex. 26, 210 S.W.2d 980, 982 (1948). The Texas Supreme Court explained the role of parol evidence

with regard to the property description contained in a contract for the conveyance of real property:

> The certainty of the contract may be aided by parol only with certain limitations. The essential elements may never be supplied by parol. The details which merely explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol. But the parol must not constitute the framework or skeleton of the agreement. That work must be contained in the writing. Thus, resort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the memorandum.

*Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150, 152 (1945).

To support his argument that the documents prepared after the third contract contain the requisite property descriptions, Swinehart relies on his typical course of dealings with Haber Oil, describing each step in the process. First, Swinehart investigated lease opportunities and reported his geological findings and recommendations to Haber Oil. If Haber Oil approved a location, it then obtained a lease. According to Swinehart, it was on the lease Haber Oil obtained that the legal description was first noted. After Haber Oil had obtained the lease, Swinehart then prepared a brochure to submit to prospective investors, which also contained a reference to the legal description of the lease property. After Haber Oil raised investment capital from the investors, an operating agreement was executed and a well was drilled on the lease property. If the prospect proved to be commercially profitable, Haber Oil was to prepare and exe-

cute an assignment of a portion of its working interest to Swinehart.

Swinehart describes the documents which purportedly provide the property description of the leases as his prospect evaluation sheet, the leases obtained by Haber Oil, the brochure prepared for potential investors, and the operating agreement. These documents were not in existence at the time Swinehart and Haber Oil entered into the third contract, nor did the parties make any reference to them in the third contract. A contract must furnish the property description "within itself or by reference to *other identified writings then in existence.*" *Pick*, 659 S.W.2d at 637 (emphasis added); *see also Crowder v. Tri–C Resources, Inc.*, 821 S.W.2d 393, 396 (Tex.App.—Houston [1st Dist.] 1991, no writ) (finding neither plat, which included property description, but was not signed by party to be charged and did not refer to letter, nor letter, which neither referred to plat nor described property in question, taken either standing alone or together contained the essential elements of an area of mutual interest). Moreover, none of those subsequent documents refer to the initial contract between Haber Oil and Swinehart.[4] Therefore, we conclude the third contract, even when considered in conjunction with the later prepared documents, does not sufficiently describe the leases to be acquired to satisfy the statute of frauds.

### 4. Existence of Fiduciary or Confidential Relationship as Basis for Constructive Trust

■ Swinehart also claims the statute of frauds does not preclude the imposition of a constructive trust. To support his contention that Haber Oil held all leases it acquired under the third contract in constructive trust for his benefit, Swinehart makes two assertions: (1) his relationship with Haber Oil was that of joint venturers, i.e ., one which gave rise to a *fiduciary* relationship as a matter of law; and (2) alternatively, even if there were no relationship based on a joint venture, a constructive trust should be imposed based on Haber Oil's alleged breach of a *confidential* relationship he claims the parties shared.

■ A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. *Young v. Fontenot*, 888 S.W.2d 238, 242 (Tex.App.—El Paso 1994, writ denied); *Newman v. Link*, 866 S.W.2d 721, 725 (Tex.App.—Houston [14th Dist.] 1993), *writ denied*, 889 S.W.2d 288 (Tex.1994) (per curiam). The imposition of a constructive trust may be based on a fiduciary or confidential relationship or when there has been actual fraud. *Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex.1974); *Hoggett v. Brown*, 971 S.W.2d 472, 494 (Tex.App.—Houston [14th Dist.] 1997, pet. denied); *Grace v. Zimmerman*, 853 S.W.2d 92, 97 (Tex.App.—Houston [14th Dist.] 1993, no writ).

■ There are two types of fiduciary relationships. The first is a formal fiduciary relationship, which arises as a matter of law, and includes the relationships between attorney and client, principal and agent, partners, and joint venturers. *Insurance Co. of N. Am. v. Morris*,

---

**4.** Swinehart also relies on *Adams v. Abbott*, 151 Tex. 601, 254 S.W.2d 78 (1952), for the proposition that multiple writings can constitute a contract sufficient to satisfy the statute of frauds. *Adams*, however, is distinguishable because a contract to sell certain property was established through a series of letters between the buyer and the seller, which contained a clear offer, counteroffer, and acceptance. *Id.* at 79. The correspondence also described the real property and made express reference to the deed records, thereby sufficiently describing the property in question. *Id.* at 79–80.

981 S.W.2d 667, 674 (Tex.1998); *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980); *Hoggett*, 971 S.W.2d at 487; *Miller–Rogaska, Inc. v. Bank One, Tex., N.A.*, 931 S.W.2d 655, 663 (Tex. App.—Dallas 1996, no writ). The second is an informal fiduciary relationship, which may arise from "a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex.1998). A confidential relationship exists in cases in which " 'influence has been acquired and abused, in which confidence has been reposed and betrayed.' " *Id.* (quoting *Crim. Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (1992)); *Querner v. Rindfuss*, 966 S.W.2d 661, 667 (Tex. App.—San Antonio 1998, pet. denied).

### *a. Joint Venture*

■ In considering Swinehart's assertion of the existence of a joint venture relationship, we note that a joint venture must be based on either an express or an implied agreement. *Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex.1978). To establish the existence of a joint venture, the following elements must be present: (1) a community of interest; (2) an agreement to share profits; (3) an agreement to share losses; and (4) a mutual right of control or management of the enterprise. *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex.1981); *Drennan v. Community Health Inv. Corp.*, 905 S.W.2d 811, 822 (Tex.App.—Amarillo 1995, writ denied). A joint venture is not established if any one of the four elements is not present. *Brazosport Bank of Tex. v. Oak Park Townhouses*, 889 S.W.2d 676, 683 (Tex.App.—Houston [14th Dist.] 1994, writ denied). If the parties do not agree to share losses, no joint venture will be implied. *Coastal Plains Dev. Corp.*, 572

S.W.2d at 288; *Ben Fitzgerald Realty Co. v. Muller*, 846 S.W.2d 110, 121 (Tex.App.—Tyler 1993, writ denied); *City of Corpus Christi v. Bayfront Assocs., Ltd.*, 814 S.W.2d 98, 108 (Tex.App.—Corpus Christi 1991, writ denied). Whether a joint venture exists is a question of law for the court's determination. *Austin Transp. Study Policy Advisory Comm. v. Sierra Club*, 843 S.W.2d 683, 691 (Tex.App.—Austin 1992, writ denied).

■ The third contract does not provide for the sharing of losses. Furthermore, Swinehart's own testimony negates any claim for either an express or an implied joint venture relationship with Haber Oil by disclaiming any agreement to share losses with respect to their arrangement under the third contract. Swinehart testified by deposition:

Q. (By Mr. Clawater) But what I'm asking is: Did you consider that you would have to come out of your pocket and pay cash for those bills that Haber Oil was responsible for paying third parties?

A. No, I didn't think I had any legal obligations.

Q. Okay. So to that extent, you didn't think you were going to be sharing in the losses incurred by Haber Oil, right, that you would have to come out of your pocket and pay those losses yourself?

A. I didn't anticipate having to pay losses out of my pocket, no.

Q. Okay. That wasn't your intention when you entered into these four agreements that we've been discussing today, correct?

A. That's correct.

Therefore, there is no evidence of either an express or an implied joint venture between Swinehart and Haber Oil.

### b. Informal Confidential Relationship

■ In the absence of a formal fiduciary relationship, Swinehart, who does not assert fraud, must establish an informal confidential relationship on which to base the imposition of a constructive trust. To impose an informal fiduciary duty in a business transaction, the requisite special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit. *Associated Indem.*, 964 S.W.2d at 288; *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex.1997); *Kostelnik v. Roberts*, 680 S.W.2d 532, 534 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Specifically, a confidential relationship can arise, if, over a long period of time, the parties have worked together in the joint acquisition and development of property before entering the agreement sought to be enforced. *Consolidated Gas & Equip. Co. of Am. v. Thompson*, 405 S.W.2d 333, 336–37 (Tex. 1966); *Exploration Co. v. Vega Oil & Gas Co.*, 843 S.W.2d 123, 126–27 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Consolidated Bearing & Supply Co. v. First Nat'l Bank at Lubbock*, 720 S.W.2d 647, 649 (Tex.App.—Amarillo 1986, no writ).

■ The fact that a business relationship has been cordial and of extended duration is not by itself evidence of a confidential relationship. *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962); *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex.App.—Houston [1st Dist.] 1996, no writ). Likewise, the fact that one businessman trusts another and relies on another to perform a contract does not give rise to a confidential relationship. *Crim Truck & Tractor Co.*, 823 S.W.2d at 594; *Seymour v. American Engine & Grinding Co.*, 956 S.W.2d 49, 60 (Tex.App.—Houston [14th Dist.] 1996, writ denied). Subjective trust is simply not sufficient to transform an arms-length transaction into a fiduciary relationship. *Schumberger Tech. Corp.*, 959 S.W.2d at 177; *Farah*, 927 S.W.2d at 676.

■ To determine the existence of a confidential or fiduciary relationship, a court must examine the actualities of the relationship between the parties involved. *Thigpen*, 363 S.W.2d at 253; *Turner v. Church of Jesus Christ of Latter–Day Saints*, 18 S.W.3d 877, 897 (Tex.App.—Dallas 2000, no pet. h.); *Atrium Boutique v. Dallas Mkt. Ctr. Co.*, 696 S.W.2d 197, 199 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Although the existence of a confidential relationship can be a question of fact, where there is no evidence to establish the relationship, it is a question of law. *See Miller–Rogaska, Inc.*, 931 S.W.2d at 663 (citing *Crim Truck & Tractor Co.*, 823 S.W.2d at 594) (affirming granting of summary judgment on plaintiff's claim for breach of fiduciary duty on basis that there was no summary judgment evidence to suggest existence of fiduciary relationship); *Farah*, 927 S.W.2d at 675 (same).

■ In support of his contention that there is a fact issue with regard to the existence of a confidential relationship with Haber Oil, Swinehart relies on *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557 (1962), in which, Gaines, a geologist, sought to impose a constructive trust on working interests on leases acquired by Hamman, an oil and gas lease broker. Gaines and Hamman had entered into numerous transactions over a period of four years before the transaction which formed the basis of the lawsuit. *Id.* at 558. Typically, Gaines gathered the geological information on particular tracts of land on which he and Hamman planned to acquire leases. *Id.* Hamman underwrote the expenses and took the leases in his name. *Id.* Hamman then transferred the leases to interested third parties, retaining an over-

riding royalty. *Id.* After Hamman had recouped his expenses, Hamman and Gaines divided the overriding royalty equally. *Id.*

■ The *Gaines* court concluded Gaines and Hamman had been engaged in acquiring oil and gas leases for a "number of years," which they owned jointly. *Id.* at 560. From this, the *Gaines* court determined Hamman had breached a confidential relationship and observed: "Should Hamman keep the entire ¼ of the ⅞ working interest ... he would be the recipient of an unjust enrichment, resulting from the breach of a confidential relationship." *Id.* The *Gaines* court explained:

> "Whether or not joint owners of overriding royalty interests sustain relations of trust and confidence toward each other depends upon the facts and surrounding circumstances. *They do not sustain that relationship by virtue alone of their being joint owners.* Our question then is whether the facts above recited, viewed in the light most favorable to Follett's contention, raise an issue on the question of the existence of a relation of trust and confidence."

*Id.* at 561 (quoting *MacDonald v. Follett,* 142 Tex. 616, 180 S.W.2d 334, 337 (1944)) (emphasis added).

Swinehart contends that, as in *Gaines,* there is a fact issue regarding the existence of a confidential relationship based on his business dealings with Haber Oil. Unlike *Gaines,* however, there is nothing in the record to suggest the existence of a confidential relationship between Haber Oil and Swinehart before the dispute arising out of the third contract. *See Associated Indem.,* 964 S.W.2d at 288 (stating that to impose informal fiduciary duty in business transaction, requisite special relationship of trust and confidence must exist prior to, and apart from, agreement made basis of suit). Unlike the parties in *Gaines,* Swinehart and Haber Oil had not been engaged in business for a "number of years," nor did they have the type of close working relationship that can serve as a basis for a confidential or relationship. *See Consolidated Gas & Equip. Co. of Am.,* 405 S.W.2d at 337 (observing that "a fiduciary relationship could arise outside of those relationships listed above when, over a long period of time, the parties had worked together for the joint acquisition and development of property previous to the particular agreement sought to be enforced"). Swinehart had only known Haber Oil's principal, Jay Haber, for a short time before entering into the first contract with Haber Oil in December 1981, and less than a year before entering into the third contract in July 1982. The first contract involved only one prospective lease and provided the same arrangement between Swinehart and Haber Oil as set forth in the third contract. The second contract was entirely superseded by the third contract.[5]

■ Moreover, there is nothing in the record to show that the relationship between Haber Oil and Swinehart was any-

---

**5.** Swinehart also cites to several other Texas Supreme Court decisions finding the existence of a fiduciary or confidential relationship where one party has agreed to acquire an interest in an oil and gas lease for the benefit of another. Those cases are distinguishable, however, because each involved a formal fiduciary relationship, which is not present in this case. *See, e.g., Ginther v. Taub,* 675 S.W.2d 724, 727–28 (Tex.1984) (imposing constructive trust on defendant found to have knowingly participated in plaintiffs' attorney's breach of fiduciary duty); *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401, 409–10 (1960) (finding fiduciary relationship based on existence of joint venture); *Smith v. Bolin,* 153 Tex. 486, 271 S.W.2d 93, 96 (1954) (finding fact issue existed regarding violation of fiduciary duty based on existence of partnership between parties).

thing other than an arms-length business relationship. In his deposition testimony, Swinehart acknowledged that the parties had negotiated the contracts at arms-length:

Q. ... I mean like that you were negotiating for and looking out after you interests and that Mr. Haber was negotiating for and looking out after his interests; was that your impression.?

A. Certainly.

Furthermore, Swinehart's claim of a confidential relationship is based, at most, on his subjective feelings of trust and personal friendship toward Jay Haber:

A. Confidential relationship, my understanding is there had to be some kind of a personal trust that I would have had in the person that went beyond a straight business relationship; that we-that I wasn't in a situation to deal—have all the—all the information and control that he would; that I would have to rely on him as an honest person to look after my responsibility—interests.

* * *

A. ... I think that there was a relationship between him of trust that was based upon our friendship; that I accepted certain things from him....

* * *

A. I think what he did was develop that trust, was [sic] he would always try and bring candy to my daughter, that he would have when he's traveling.... He would get me birthday gifts. He would take me to dinner. Things of that nature; that he would relate personal things about himself that led me to believe this man was my friend.

Reliance on another party to perform its obligations under an agreement is not sufficient to establish a confidential relationship. See Crim Truck & Tractor Co., 823 S.W.2d at 594 (stating the fact that one businessman trusts another and relies on the other to perform contract does not give rise to confidential relationship).

■ Finally, a confidential relationship is a two-way street: "one party must not only trust the other, but the relationship must be mutual and understood by both parties." Hoover v. Cooke, 566 S.W.2d 19, 26 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) (citing Furr's, Inc. v. United Specialty Adver. Co., 385 S.W.2d 456 (Tex.Civ.App.—El Paso 1964, writ ref'd n.r.e.)). Swinehart testified that after entering into the contracts with Haber Oil, he did not present his geological findings on prospective leases exclusively to Haber Oil, but presented those same findings to other oil companies simultaneously. This testimony evinces a belief by Swinehart that he did not owe any particular duty or loyalty to Haber Oil. Furthermore, Swinehart characterized his work for Haber Oil as that of an independent contractor.

Based on this record, we conclude there was no confidential relationship between Haber Oil and Swinehart on which to impose a constructive trust to avoid the statute of frauds.

### 5. Partial Performance

■ Swinehart also argues the doctrine of partial performance, which would remove an agreement from the statute of frauds, is applicable in this case. To satisfy the "partial performance" exception and thereby remove a contract for the conveyance of real estate from the statute of frauds, the following elements must be established: (1) payment of consideration by the vendee/lessee in either money or services; (2) possession of the property by the vendee/lessee; and (3) permanent and valuable improvements to the property by

the vendee/lessee, or, the presence of such facts as would make the transaction a fraud upon the vendee/lessee if not enforced. *Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114, 1116 (1921); *Elizondo v. Gomez,* 957 S.W.2d 862, 864 (Tex.App.—San Antonio 1997, pet. denied). Each of these elements is indispensable. *Penwell v. Barrett,* 724 S.W.2d 902, 904 (Tex. App.—San Antonio 1987, no writ).

■ Swinehart has not shown that he took possession of the leased properties. To the contrary, in his brief, he states Haber Oil retained possession of the properties. Partial performance does not operate as an exception to the statute of frauds when the vendee/lessee does not take possession of the property. *Maddox v. Cosper,* 25 S.W.3d 767, 772 (Tex.App.—Waco 2000, no pet.). Therefore, Swinehart may not rely on the doctrine of partial performance to avoid application of the statute of frauds in this case.

### B. Bankruptcy Claim

■ Swinehart claims appellees should have filed a claim on his behalf in the Haber Oil bankruptcy proceedings, identifying him as a secured creditor under a constructive trust theory rather than as an unsecured creditor. Swinehart contends that had appellees asserted a constructive trust theory in the bankruptcy proceedings from the very beginning, and predicated this theory on the breach of a confidential relationship, he would have prevailed and recovered the unassigned mineral interests (or their value) in the bankruptcy court.[6]

■ Under 11 U.S.C. § 541(d), where a debtor holds only legal title and not an equitable interest, the interest becomes the property of the estate only to the extent of the debtor's legal title. *In re Maple Mortgage, Inc.,* 81 F.3d 592, 595 (5th Cir.1996); *In re Haber Oil,* 12 F.3d at 435. In a trust relationship, the law divides the bundle of rights in the property—the trustee holds legal title while the beneficiary possesses an equitable title or property interest. *In re Southmark Corp.,* 49 F.3d 1111, 1117–18 (5th Cir.1995). Because the debtor does not own an equitable interest in the property it holds in trust for another, that equitable interest is not property of the estate. *Begier v. Internal Revenue Serv.,* 496 U.S. 53, 59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Typically, under the constructive trust doctrine, the party who has been unjustly enriched at another's expense is treated as a trustee under state law who holds legal title for the injured party's benefit. *In re Maple Mortgage, Inc.,* 81 F.3d at 596; *In re Haber Oil,* 12 F.3d at 435–36. Therefore, section 541(d) accords the beneficiary of a properly imposed constructive trust the right to recover the trust property in full from the bankruptcy trustee or the debtor in the bankruptcy proceeding. *In re Quality Holstein Leasing,* 752 F.2d 1009,1012 (5th Cir.1985). When property which otherwise would be considered part of a debtor's estate is alleged to be held in trust for another, the claimant bears the burden of establishing the existence of the constructive trust. *In re Southmark Corp.,* 49 F.3d at 1118. State law determines whether a party has shown that the property is being held in a constructive trust. *Id.; see also In re Oxford Management, Inc.,* 4 F.3d 1329, 1334 (5th Cir.1993) (stating that in absence of controlling bank-

---

**6.** Appellees assert Swinehart never raised secured creditor status in his response to the motions for summary judgment and, therefore, may not assert this argument as a ground for reversal. *See* Tex.R. Civ. P. 166a(c). Our review of the record establishes Swinehart raised secured creditor status in his response to appellees' motions for summary judgment.

ruptcy law, substantive nature of property rights is defined by state law).

■ Contrary to Swinehart's assertion, a secured interest in the debtor's property does not provide for ownership of that property. A secured claim is an allowed claim secured by a lien on property in which the estate has an interest. 11 U.S.C. § 506(a) (1993). Unlike property subject to a constructive trust, property subject to a lien is part of the bankruptcy estate. Therefore, establishing secured creditor status would not have afforded Swinehart an ownership interest in the unassigned leases, or the full value of the leases under the plan of reorganization.

Swinehart further contends appellees' assertion that he could be no more than an unsecured creditor is in direct contradiction of the Fifth Circuit's determination that Swinehart had an arguably valid claim for the imposition of a constructive trust. Aside from the fact that property subject to a lien is treated differently in bankruptcy from property being held in a constructive trust, Swinehart misplaces his reliance on the Fifth Circuit's opinion in the appeal of the Haber Oil bankruptcy proceeding. Nowhere in its opinion does the Fifth Circuit state Swinehart had an arguably valid claim for the imposition of a constructive trust based on either fraud or the breach of a confidential or fiduciary relationship.[7]

■ Finally, Swinehart had only a "claim" under bankruptcy law, not an ownership interest in the unassigned mineral interests. Bankruptcy law defines "claim" as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (1993).

■ Under 11 U.S.C. § 101(5), a right to equitable relief for breach of performance of a contract which does not give rise to a right of payment is not a "claim" for bankruptcy purposes and is not susceptible to discharge. *In re Oseen,* 133 B.R. 527, 530 (Bankr.D.Idaho 1991) (citing 2 L. King, COLLIER ON BANKRUPTCY, ¶ 101.05 at 101.32 (15th ed.1991)); *In re Aslan,* 65 B.R. 826, 830–31 (Bankr.C.D.Cal.1986), *aff'd,* 909 F.2d 367 (9th Cir.1990). On the other hand, where a creditor holds a right to an equitable remedy for breach of performance, that creditor will have a "claim" for bankruptcy purposes only if the specific performance decree may be satisfied by

---

7. The Fifth Circuit first notes the effect on federal bankruptcy law of a constructive trust imposed under state law, and sets forth the two circumstances under which a constructive trust may be imposed in Texas: (1) fraud and (2) the breach of a confidential or fiduciary relationship. *In re Haber Oil,* 12 F.3d at 435–37. The Fifth Circuit then observed that although Swinehart originally had predicated his state court constructive trust claim on the breach of a confidential relationship, he expressly disavowed that theory in the bankruptcy court and on appeal and, instead, proceeded on the theory of fraud in support of his constructive trust claim in the bankruptcy proceedings. *Id.* at 437. The Fifth Circuit proceeded, accordingly, on Swinehart's claim of fraud as the basis for the imposition of a constructive trust and ultimately concluded Swinehart had not established the knowing and reliance elements of fraud. *Id.* at 441–42. The Fifth Circuit did not state that Swinehart would have had a valid constructive trust claim but for appellees' failure to assert the breach of a confidential or fiduciary relationship rather than fraud.

an alternative award of monetary damages. *In re Pribonic,* 70 B.R. 596, 601 (Bankr.W.D.Pa.1987); *In re Aslan,* 65 B.R. at 831. Therefore, the Bankruptcy Code recognizes a claim only if it can be reduced to money. *In re Pribonic,* 70 B.R. at 601; *see also Cohen v. de la Cruz,* 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (citing *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 559, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)) (stating a claim as defined in section 101(5) is a "right to payment").

■ As discussed above, the third contract does not satisfy the statute of frauds and, therefore, is not subject to specific performance. Even if the third contract were enforceable and susceptible to specific performance, Texas law provides damages as an alternative remedy for breach of contract for the transfer of real property. *Ryan Mortgage Invs. v. Fleming–Wood,* 650 S.W.2d 928, 936 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.); *Shelton v.. Poynor,* 326 S.W.2d 583, 585 (Tex. Civ.App.—El Paso 1959, writ dism'd); 63 Tex. Jur. 3d *Real Estate Sales* § 597 (1988). Therefore, because Swinehart's claim for the unassigned mineral interests under the third contract comes within the definition of "claim" for bankruptcy purposes, at most, he was entitled to pre-petition unsecured creditor status under the plan, entitling him to the pro-rata amount allowed for that class of creditor.

■ Swinehart also claims he could have recovered his entire interest in the unassigned mineral interests as a secured creditor had appellees filed a claim under an equitable assignment theory. Swinehart, however, did not present any theory on equitable assignment in the trial court. A summary judgment may not be reversed on a ground not raised in the trial court.

Tex.R. Civ. P. 166a(c); *State Bd. of Ins. v. Westland Film Indus.,* 705 S.W.2d 695, 696 (Tex.1986); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 676 (Tex.1979). Therefore, Swinehart has waived this argument on appeal.

## C. Constructive Trust

■ In the underlying litigation, the only relief Swinehart sought against Haber Oil was the imposition of a constructive trust on the unassigned mineral interests based on his claim that Haber Oil breached a confidential relationship. However, in this legal malpractice action, appellees sought summary judgment based on the absence of causation only on the grounds that the third contract was not enforceable under the statute of frauds and the contract right Swinehart sought to enforce constituted a "claim" under bankruptcy law. Curiously, appellees did not assert in their motion for summary judgment that there was a lack of causation based on Swinehart's inability to establish a claim of constructive trust, the only claim Swinehart actually asserted in the underlying suit. Although we have addressed Swinehart's contention that the statute of frauds does not preclude the imposition of a constructive trust, we nevertheless must reverse and remand the portion of the summary judgment in favor of appellees on Swinehart's malpractice claim to the extent it is based on a lack of causation due to Swinehart's inability to establish a constructive trust in the underlying suit. *See Mafrige v. Ross,* 866 S.W.2d 590, 592 (Tex.1993), *overruled on other grounds, Lehmann v. Har–Con Corp.,* 39 S.W.3d 191 (Tex.2001) (holding summary judgment should be reversed and remanded if it grants more relief than requested).[8]

■ Appellees do not dispute that this particular issue—lack of causation due

---

8. Swinehart raised the issue of a constructive trust on the basis of a confidential relationship in response to appellees' statute of frauds argument. Appellees, in turn, addressed the

to Swinehart's inability to establish a constructive trust—was not specifically identified in their motion for summary judgment. Instead, they argue that all parties "*knew* the causation ground, in the context of the application of the constructive trust doctrine, was before the trial court."[9] However, in Texas summary judgment practice, the rule is clear: "A motion for summary judgment must itself expressly present the grounds on which it is made, and must stand or fall on these grounds alone." *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex.1997) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993)).[10] In accordance with this express Texas Supreme Court mandate, this court has consistently held that "grounds not explicitly stated within the motion will not be addressed in determining whether the trial court erred in granting the motion for summary judgment." *Coastal Cement Sand, Inc. v. First Interstate Credit Alliance, Inc.*, 956 S.W.2d 562, 565 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (citing *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 805 (Tex.1994)). Although, the Texas Supreme Court has recognized that Rule 166a(c) is "an admittedly rigorous rule," the court has specifically cautioned against carving out exceptions to this rule. *McConnell*, 858 S.W.2d

at 341 (stating that "[c]arving exceptions to this simple requirement that the motion for summary judgment state the specific grounds frustrates the purpose of Rule 166a(c))". Therefore, because the trial court's judgment grants more relief than appellees requested, we must reverse and remand the portion of the summary judgment in favor of appellees to the extent that it is based on a lack of causation due to Swinehart's inability to establish a claim for constructive trust. *See Mafrige*, 866 S.W.2d at 592; *see also Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 673 (Tex.App.—Houston [1st Dist.] 1996, no writ) (reversing summary judgment in legal malpractice action where defendants' motion for summary judgment did not address plaintiff's contention that defendants should have asserted particular claim in underlying suit).

## IV. CONCLUSION

Appellees successfully negated the causation element of Swinehart's negligence and gross negligence claims by establishing that: (1) Swinehart could not have recovered in the underlying suit because the third contract was not enforceable under the statute of frauds, and (2) Swinehart had only a "claim" in the unassigned mineral interests under bankruptcy law, not an ownership interest. However, we

---

constructive trust issue in their reply to Swinehart's argument. Addressing a new ground or cause of action in a reply brief is not sufficient to comply with Rule 166a(c) of the Texas Rules of Civil Procedure. *Guest*, 993 S.W.2d at 402–03; *Sanders v. Capitol Area Council*, 930 S.W.2d 905, 910–911 (Tex. App.—Houston [1st Dist.] 1996, writ denied); *Smith v. Atlantic Richfield Co.*, 927 S.W.2d 85, 88 (Tex.App.—Houston [1st Dist.] 1996, writ denied); *R.R. Publ'n & Prod. v. Lewisville Indep. Sch. Dist.*, 917 S.W.2d 472, 473–74 (Tex.App.—Fort Worth 1996, no writ).

9. Emphasis added.

10. The Supreme Court explained its rationale for this requirement:

"There is nothing onerous or unreasonable about requiring the movant to state the grounds upon which he seeks to win a lawsuit without a trial. If the grounds are so obvious from the summary judgment proof, what is burdensome about requiring the movant to state them in the motion? Grounds may be stated concisely, without detail and argument. But they must at least be listed in the motion."

*McConnell*, 858 S.W.2d at 340 (quoting *Roberts v. Southwest Tex. Methodist Hosp.*, 811 S.W.2d 141, 146 (Tex.App.—San Antonio 1991, writ denied) (op. on reh'g)).

reverse the judgment to the extent it is based on a lack of causation due to Swinehart's inability to establish a claim for constructive trust, and remand that portion to the trial court for further proceedings consistent with this opinion. Accordingly, the judgment of the trial court is affirmed, in part, and reversed and remanded, in part.