**Pauline Hensel ASHER et al., Appellants,**

**v.**

**Mrs. Ella GATES et vir., Appellees.**

**No. 12722.**

Court of Civil Appeals of Texas.

Galveston.

Oct. 7, 1954.

Rehearing Denied Nov. 18, 1954.

Lockhart, Watson & Peters'on, Dudley W. Peterson, Galveston, and J. A. Copeland, Houston, for appellants.

Henry W. Flagg, Galveston, for appellees.

CODY, Justice.

Ella Gates, one of the surviving children of her widowed mother, Mrs. Minnie Benedict, joined by her husband, brought this suit in trespass-to-try-title to all those certain lots, tracts or parcels of land situate in the City and County of Galveston, State of Texas, known and described upon the map of the City of Galveston as made by the Galveston Land & Improvement Company as Lots 10, 11 and 12 in Block "2" in Denver Resurvey according to the map or plan of same which is recorded in Book 91, page 196, Galveston County Records. Said lots are shown located upon a copy of said map which is appended to this opinion. As so shown said lots front on the south side of Broadway at its intersection with 55th Street. Said Block "2" is also

Sub^d of Blocks

indicated upon said map as "Org (Original) 175". The dimensions of each lot are 25 feet by 120 feet as is indicated by the block of lots shown at the lower righthand corner of said map. The defendants to said suit were the surviving heirs of Mrs. Minnie Benedict, other than plaintiff, Mrs. Gates, and the surviving heirs of said surviving heirs. It was stipulated between the parties that Mrs. Minnie Benedict acquired title to said lots while a feme sole, and that she was the common source.

The plaintiff alleged that the said deed in question, which was executed by Mrs. Minnie Benedict on January 30, 1950, by making her mark some two days before her death, conveyed said lots to plaintiff; and plaintiff in her pleadings sought to have said deed construed as so conveying said lots to her. Plaintiff alleged that defendants were claiming an interest in said lots, which constituted a cloud on her title. We deem it unnecessary to give the substance of defendants' answer other than to state that defendants also brought a cross-action in trespass-to-try-title against plaintiffs and also alleged "undue influence".

The deed in question is referred to in the record as plaintiff's exhibit No. 3, and the description contained therein reads: "all that certain land, property and premises located and being situate in the City and County of Galveston, Texas, and commonly known, designated and described as: All of Lots Number Ten (10), Eleven (11) and Twelve (12) in Block One Hundred Seventy-five (175), in Denver Resurvey No. 2, together with all improvements, appurtenances and hereditaments thereunto in anywise belonging and appertaining."

The case was submitted to the jury upon three special issues. In the first the jury found that Mrs. Minnie Benedict had the mental capacity to execute the deed in question on January 30, 1950, at the time she executed same by making her mark. In answer to special issue No. 2 the jury found that the description contained in the deed in question was sufficient to enable a party familiar with the locality to identify a definite tract or parcel of land with reasonable certainty to the exclusion of any and all other tracts of land. In answer to special issue No. 3 the jury found that by the instrument, which was introduced in evidence as plaintiff's exhibit No. 3, Mrs. Minnie Benedict intended to convey to her daughter, Mrs. Ella Gates, the property known and described as follows: "All those certain lots, tracts or parcels of land, lying and being situate in the City and County of Galveston, State of Texas, known, designated and described upon the map or plan of the City of Galveston as made by the Galveston Land & Improvement Company as Lots ten (10), eleven (11) and twelve (12) in Block two (2) Denver Resurvey, according to the map or plan of same, which is recorded in Book 91, page 196, Galveston County Records, to which reference is made."

Upon the answers of the jury to aforesaid special issues the court rendered judgment in favor of plaintiff, Mrs. Gates. Prior to the submission of the special issues, the defendants moved for a directed verdict in their favor. The defendants, appellants here, predicate their appeal upon twenty formal points. These points, however, boil down to but two, namely, (a) that the description contained in the deed in question is fatally defective, and (b) that the court erred in refusing to give appellants' requested special issue on "undue influence".

We are constrained to hold that the description contained in the deed in question is fatally defective. It is not our view that the rule announced by Lord Bacon, that parol evidence may be introduced to resolve latent ambiguities but not patent ones, has any application here. There is nothing ambiguous about the description which is contained in the deed. There simply is no survey or addition as "Denver Resurvey No. 2" in the City of Galveston. And Block No. 175 in Denver Resurvey was carved out of old "Outlot" 153, and is bounded on the north by Avenue "S", on the east by 51st Street, on the south by Avenue "S½" and on the west by 52nd Street, and the Grantor owned no

land in said Block. Indeed, Lord Bacon's rule was announced long before the Statute of Frauds was enacted, which did not happen until during the reign of Charles II. Article 3995, Vernon's Ann.Civ.St., is our version of the Statute of Frauds and provides "No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized:

\* \* \*

"4. Upon any contract for the sale of real estate \* \* \*."

 It is well settled that there must be at least a nucleus of description contained in the deed or referred to therein before any parol evidence can be admitted. As quoted by the late Chief Justice Monteith of this Court in Krider v. Hempftling, Tex.Civ.App., 137 S.W.2d 83, 85, " 'The rule generally for determining the sufficiency of description contained in a deed is that if there is enough to enable a party familiar with the locality to identify the premises intended to be conveyed, to the exclusion of others, it will be sufficient. It is enough that the description points out and indicates the premises so that by applying it to the land it can be found and identified.' "

 Here the grantor lived on the lots which the jury found, in answer to special issue No. 3, that she intended to convey by the deed in question. She didn't own any other real estate. But it is the settled law of this State that the ownership of land is not a circumstance which can be looked to in order to identify the land which the grantor in a deed intended to convey. Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703, 705; Brown v. Gaines, Tex.Civ.App., 131 S.W.2d 801, writ refused. In the last cited case this Court held on original hearing that ownership was a circumstance which could be looked to in order to identify the land which the grantor intended to

convey, but was compelled on rehearing to confess error.

 Here the court admitted evidence over appellants' objection that the grantor instructed the draftsman of the deed to convey the lots which she owned and on which she was living, to the grantee in the deed. The court permitted qualified surveyors to testify over objections by appellants that they could locate the lots intended to be conveyed by the description in the deed, and they purported to identify the lots described in the deed as those on which the grantor lived, and which were the only lands which she owned. Of course, everybody knows that the grantor intended to convey lots which she owned, and the lots on which she lived were the only lots she owned. But since there was no ambiguity in the description, the construction of the deed was a matter of law for the court. Kingston v. Pickins, 46 Tex. 99, 101. As stated before, there was no ambiguity in the deed to be explained or removed, and no survey or addition in the City of Galveston known as Denver Resurvey No. 2, and the only Block in Denver Resurvey which can be identified as Block 175 contained no lots owned by the grantor. Under these circumstances, no parol evidence could be considered as showing that different lots from those described in the deed were intended to be conveyed. Masterson Irr. Co. v. Foote, Tex.Civ.App., 163 S.W. 642, 646, 647, writ refused; Yarbrough v. Clarkson, Tex.Civ.App., 155 S.W. 954, 955, writ refused; Davis v. George, 104 Tex. 106, 134 S.W. 326; Browne v. Gorman, Tex.Civ.App., 208 S.W. 385, writ refused; West v. Hermann, 47 Tex.Civ. App. 131, 104 S.W. 428, 431; Texas Osage Coop. Royalty Pool, Inc. v. Colwell, Tex. Civ.App., 205 S.W.2d 93, 95, writ refused. Here appellee's proper remedy would have been a timely suit to correct the description because of mutual mistake, the mistake of the draftsman of the deed and of the grantee. Appellee's pleadings did seek such relief, but it was abandoned.

For the reason that the description in the deed was fatally defective, the judgment

of the court below must be reversed, and the cause remanded with instructions to the court below to enter judgment that the title to the lots in question be vested in the heirs of the grantor according to the laws of descent and distribution of this State.

In view of the disposition we have made of the appeal, we do not reach appellants' point which presents that the court erred in refusing to submit their specially requested special issue on "undue influence". However, we have considered the point, and have found that it should be overruled.

· Reversed and remanded with instructions.

HAMBLEN, Chief Justice.

· I dissent from the holding of the majority of the Court. As I understand the opinion filed, the holding is based upon the proposition that since there exists no "Denver Resurvey No. 2" in the City of Galveston, the description here involved is not ambiguous but is erroneous, described no land at all, and thus falls within the rule announced in the case of Texas Osage Cooperative Royalty Pool, Inc. v. Colwell, Tex.Civ.App., 205 S.W.2d 93, 94. In that case the description was "the west 160 acres of land, Section 16, Block P, Hale County, Texas". While there existed a Block P in Hale County, there existed no Section 16 in Block P. An attempt was made to prove by parol that the grantor in the deed intended to describe Section 16 in Block S rather than in Block P. The court held that there was nothing ambiguous about the designation of "Block P", and that parol evidence could not be introduced to prove that the grantor intended to describe other and different land.

I think the case now under consideration is distinguishable from the cited case. Here, as in that case, there is nothing on the face of the instrument which indicates any ambiguity. If any exists, it is therefore latent. In order to locate the land described on the ground, it is necessary to refer to and examine the map records of Galveston County. Such examination reveals the following facts: 1. There is no "Denver Resurvey No. 2"; 2. There is a "Denver Resurvey"; 3. There is a Block 2, in Denver Resurvey; 4. The block of Denver Resurvey which is designated on the map as "2", bears also the designation on the same map, as "Org 175". It seems to me that these disclosures, all of which would be apparent to anyone undertaking to locate on the ground the land described in the deed, would immediately give rise to the question as to what part of the description the "No. 2" referred. It could, as the majority opinion concludes it must, refer to "Resurvey", in which event, as the court has held, the description is fatally defective, and describes no land at all. But to me it seems that it could also refer, perhaps not with equal rhetorical or grammatical correctness, but under the circumstances in this case, with greater logic, to Block No. 2, Denver Resurvey, in which event the description perfectly identifies the exact land which all of the extrinsic evidence, if properly admitted, shows was intended to be conveyed. The word "Resurvey" indicates a new or different survey of a pre-existing survey. And Block No. 2 of Denver Resurvey is in fact the same identical land as was designated as Block 175 of the original survey of the City of Galveston. If the word "Block" be parenthetically inserted before the designation "No. 2", so that the final phrase of the description reads "in Denver Resurvey (Block) No. 2", there would exist no doubt as to the land intended. Even if a comma be inserted between "Denver Resurvey" and "No. 2", so that the phrase reads "in Denver Resurvey, No. 2" the intention of the grantor is likewise evident. And when consideration is given to the fact that Block No. 2 of Denver Resurvey is the same property as original Block 175, and is so designated upon the map, reference to which is called for by the description itself, coupled with the fact that there is no "Denver Resurvey No. 2", the conclusion is quite possible and logical that the description contained in the deed means "Block 2" of Denver Resurvey, rather than "Denver Resurvey No. 2". For these reasons, it seems to me that the description here involved is not, as the court has held, fatally defective, but

rather is one which contains a latent defect. These same considerations distinguish this case from Masterson Irr. Co. v. Foote; Yarbrough v. Clarkson; Davis v. George; Browne v. Gorman; and West v. Hermann, which are cited in the majority opinion. In those cases the description was erroneous whereas in this case the description, being capable of two constructions, is ambiguous. If this conclusion is correct, parol evidence is admissible to prove the intention of the grantor. The evidence here amply supports the jury verdict upon which the judnment is based, and in my opinion that judgment should be affirmed.