**Mark CARPENTER and Carpco Efficient Energy, L.L.C.,**
**Appellants**

v.

**Chris PHELPS and Steve Helms, Appellees.**

No. 01–09–00203–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 31, 2011.

Rehearing Overruled Sept. 21, 2012.

Andrew G. Khoury, Longview, Dean A. Searle, Marshall, R. Russell Hollenbeck, Wright Brown & Close, LLP, Houston, Roger W. Anderson, Gillen & Anderson, PC, Tyler, for appellants.

Vance P. Freeman, Shore Freeman Mills, PC, Longview, for appellees.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

JIM SHARP, Justice.

The issue posed here is whether documents that recite a description of real property as Texas Railroad Commission "Oil Lse/Gas ID no. 08294" and "the M.T. Cole 'A' Lease in Gregg County, Texas" are sufficient to satisfy the statute of

frauds.[1] We hold that because the pertinent documents do not furnish within themselves, or by reference to other existing writings, the means or data by which the land may be identified with reasonable certainty, the statute of frauds is not satisfied, and we reverse.[2]

## Background

This dispute arises out of a business transaction between appellant Mark Carpenter and investors that included appellees Chris Phelps and Steve Helms. Carpenter is the sole member of appellant Carpco Efficient Energy, L.L.C., which, in 2004, acquired an oil lease in Gregg County encompassing as many as 48 wells (the M.T. Cole "A" lease). Carpenter and Carpco sought $80,000 in capital to develop the lease. It is undisputed that Helms and Phelps originally invested $30,000.00 and $10,000.00, respectively.

No formal joint venture agreement or joint operating agreement was executed by the parties before the lease was put into production and began to generate income. Rather, the parties exchanged numerous e-mails, which Phelps and Helms argue form an enforceable contract. Helms and Phelps sued Carpenter and Carpco in 2007, alleging in part a breach of contract and breach of fiduciary duty.

The fundamental disagreement between the parties is whether Carpenter and Carpco were merely seeking to raise an initial capital amount for the first of three planned phases of development of the M.T. Cole "A" lease ("Phase 1"), thus limiting Phelps's and Helms's investments to only a portion of the lease, or whether there was an enforceable contract for Phelps's and Helms's investment in the entire lease. Carpenter's testimony was that he only raised $72,000.00 for Phase 1 of the planned development.

After a bench trial, the court determined there was an enforceable contract and found that the material terms were as follows:

- Plaintiffs would invest, with other investors, in a working interest in the M.T. Cole "A" Lease and associated oil wells;

- Plaintiffs would share, with other investors, in a pro rata ownership of one hundred percent ((100%)) of the M.T. Cole "A" Lease until net revenues from the wells equaled the principal and interest due to the investors ("payout");

- Defendants would pay Plaintiffs eight percent (8%) interest on their investment until payout occurred;

- Plaintiffs' would share a diluted pro rata ownership of fifty percent (50%) of the M.T. Cole "A" Lease after payout; and

- Defendants would deliver a joint operating agreement (JOA) to Plaintiffs showing their and other investors ownership interest in the M.T. Cole "A" Lease as well as containing the other terms of operating the M.T. Cole "A" Lease.

Based on these findings, the trial court rendered judgment against Carpenter and Carpco: (1) that Phelps recover actual damages of $80,493.74, along with pre- and

1. *See* TEX. BUS & COM. ANN. § 26.01 (West 2009) (statute of frauds).

2. The Texas Supreme Court transferred this appeal from the Court of Appeals for the Twelfth District of Texas. Misc. Docket No. 08-9177 (Tex. Dec. 15, 2008); *see* TEX. GOV'T CODE ANN. § 73.001 (West 2005) (authorizing transfer of cases). We are unaware of any conflict between precedent of the Court of Appeals for the Twelfth District and that of this Court on any relevant issue. *See* TEX. R.APP. P. 41.3.

postjudgment interest and $100,276.94 in attorney's fees; (2) that Phelps receive an 11.25% working interest in the M.T. Cole "A" lease; (3) that Helms recover actual damages of $132,378.44 (plus pre- and postjudgment interest) and $167,128.07 in attorney's fees; (4) that Phelps receive an 18.75% working interest in the M.T. Cole "A" lease; and (5) that the parties enter into a "AAPL Form 610–1989 Joint Operating Agreement."

On appeal, Phelps and Helms cite to the following statements in a letter and other e-mails to support the trial court's findings regarding the material terms of the alleged contract:

Carpenter to Phelps, January 13, 2005:

Carpco Efficient Energy, Co., LLC is looking for investors to invest in the M.T. Cole "A" lease in Gregg County, Texas. The field consists of 48 wells drilled to approximately 3,000 feet into the Woodbine formation.

. . . .

... Ideally, I would like to sell a 1/3 interest for $80,000 with interest payable @ 8% on the principal until the original investment is returned plus interest at which time the investors stake is converted into a 1/6 carried interest.

Carpenter to Phelps, January 18, 2005:

Ross asked me the same question about royalty or working interest. Royalty interest is usually associated with existing production. My deal will require a workover program before a level of production can be established and defined. Therefore the interest would be a working interest.

. . . .

... This is why I am confident that all investors will get their original investment back in less than two years and I will end up with my share of the production. The way the deal is structured I don't get my carried interest until APO (after payout).

Carpenter to Phelps, January 18, 2005:

Have you received any feedback from Steve in Chicago? I need to get the Joint Operating Agreement finalized before the other investors make their capital contributions. The JOA spells out the percentages of all involved and cannot be completed until everyone and their interest is listed.

Carpenter to Phelps, January 29, 2005:

I got an e-mail this morning from one of the investors in the East Texas oil deal wanting to know what the hold up was with the JOA. I told him to complete the JOA and begin producing the field I need to know who was in and their percentages.

## Analysis

### A. Statute of frauds

■ In its second issue, Carpenter and Carpco contend the trial court erred in concluding that the alleged contract satisfies the statute of frauds because it "furnished within itself the means or data by which property, the M.T. Cole 'A' Lease, in Gregg County, Texas, may be identified with reasonable certainty" and "describes the property and contains sufficient data such that a party familiar with the locality can identify the property with reasonable certainty." *See* TEX. BUS & COM. ANN. § 26.01 (West 2009) (statute of frauds). Carpenter and Carpco further contend the trial court erred in concluding that the contract was partially performed and that promissory estoppel bars the application of the statute of frauds.

■ The trial court found that the alleged contract provided that Phelps and Helms would initially share in a pro rata ownership of 100% of the M.T. Cole "A" lease until net revenues from the wells

equaled the principal and interest due the investors, after which Phelps and Helms would share in a pro rata ownership of 50%. On appeal, the parties do not dispute that an agreement assigning such real property interests must contain a description of the property in order to satisfy the statute of frauds. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex.1982) (holding assignment of oil and gas lease is subject to Business and Commerce Code section 26.01); *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex.1972) (same). The initial question is whether the description of the property is sufficient.

Phelps and Helms argue the following serves as an adequate description: (1) references in the initial "pitch package" to "the M.T. Cole 'A' lease in Gregg County, Texas" in a field that consists of "48 wells drilled to approximately 3,000 feet into the Woodbine formation"; (2) a 2004 document Carpenter filed with the Texas Railroad Commission that lists "08294" as the "Oil Lse/Gas ID no." for a lease described as "Cole, M.T."; (3) an assignment and bill of sale of the "M.T. Cole 'A' lease"; and (4) two drawings entitled "East Texas Well Location Map Lease Area 1 and 2," neither of which contains any description of a location other than "East Texas."

▉ To satisfy the statute of frauds, a writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land may be identified with reasonable certainty. *Morrow*, 477 S.W.2d at 539. The Texas Supreme Court has acknowledged that Texas employs a strict application of the statute of frauds for interests in land, but nonetheless allows for a liberal construction of the words describing the land. *Gates v. Asher*, 154 Tex. 538, 280 S.W.2d 247, 248 (1955). Parol evidence may be admitted to explain the descriptive words

and to identify the land where the instrument contains the "nucleus" of the description. *Id.*

*Gates* concerned the sufficiency of the following description of land:

> All that certain land, property and premises located and being situate in the City and County of Galveston, Texas, and commonly known, designated and described as:
>
> All of Lots Number Ten (10), Eleven (11) and Twelve (12) in Block One Hundred Seventy-five (175), in Denver Resurvey No. 2, together with all improvements, appurtenances and hereditaments thereunto in anywise belonging or appertaining.

*Id.* at 248. Because there was no "Denver Resurvey No. 2," this Court held that no parol evidence could be admitted to resolve the erroneous description. *See Asher v. Gates*, 272 S.W.2d 585, 589–90 (Tex.Civ. App.-Galveston 1954), *rev'd*, 280 S.W.2d 247 (Tex.1955). The supreme court reversed, holding that parol evidence was admissible to show that the land could be identified as "Lots Nos. 10, 11 and 12, *original* Block 175, *Block No.* 2 Denver Resurvey." *Gates*, 280 S.W.2d at 249 (emphasis added).

There was testimony at trial from Bryan Maxey, a petroleum landman, that, based on the documents previously discussed, he could obtain a list of the wells and physically locate them based on an Internet search using the "lease number." Maxey further testified that he would have no difficulty in identifying the specific property. Maxey, however, did not offer a legal description of the M.T. Cole "A" lease, either by metes and bounds or by reference to any documents in the Gregg County real property records that contained a legal description. Furthermore, the appellate record does not establish that Maxey actually located the lease.

Phelps and Helms suggest that Maxey's testimony satisfies the test in *Gates v. Asher.* We disagree. *Gates* allows parol evidence when there is a "nucleus" of the property's description. Here, the "pitch package," the Railroad Commission filing, the assignment and bill of sale, and the two drawings only describe land somewhere in Gregg County. Phelps and Helms do not cite to any authority that the reference to a Railroad Commission lease number can serve as the basis for a legal description. Even if a Railroad Commission lease number were a "nucleus" of the property's description, there is no evidence in the appellate record of the property's legal description or even evidence that Maxey, in fact, actually found the property. *See Westland Oil Dev. Corp.,* 637 S.W.2d at 909 (holding that words which expressly refer to adequate legal description provide "nucleus" of description that is legally sufficient for statute of frauds); *Wilson v. Fisher,* 144 Tex. 53, 188 S.W.2d 150, 152 (1945) ("[R]esort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the memorandum.").

*Partial performance*

The trial court held in the alternative that the alleged contract was partially performed, and Phelps and Helms argue that this precludes the application of the statute of frauds. Satisfaction of the "partial performance" exception, so as to remove the alleged contract from the statute of frauds, requires the following elements be established: (1) payment of consideration by the vendee/lessee in either money or services; (2) possession of the property by the vendee/lessee; and (3) permanent and valuable improvements to the property by the vendee/lessee, or the presence of such facts as would make the transaction a fraud upon the vendee/lessee if not enforced. *Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114, 1116 (1921); *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.,* 48 S.W.3d 865, 882–83 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Each of these elements is indispensable. *Swinehart,* 48 S.W.3d at 883.

Because Phelps and Helms neither show nor argue that they took possession, their reliance upon the doctrine of partial performance to avoid application of the statute of frauds fails. *See id.* at 883.

*Promissory estoppel*

The trial court also alternatively held that the doctrine of promissory estoppel bars the application of the statute of frauds because Carpenter and Carpco promised to execute assignments and joint operating agreements that satisfied the statute of frauds. For promissory estoppel to create an exception to the statute of frauds requires a promise to sign a prepared written contract which would satisfy the requirements of the statute of frauds. *Beta Drilling, Inc. v. Durkee,* 821 S.W.2d 739, 741 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (citing *Nagle v. Nagle,* 633 S.W.2d 796, 800 (Tex.1982)). A promise to prepare the written contract is not sufficient. *Beta Drilling, Inc.,* 821 S.W.2d at 741. The defendant must have promised to sign a particular existing written agreement. *Id.* (citing *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 766 (5th Cir.1988) (applying Texas law)).

Here the trial court explicitly found that the parties agreed "to negotiate the terms of the Joint Operating Agreement in good faith," but further acknowledged that the agreement had *yet to be drafted.* As such, no existing written agreement containing a legal description of the lease that Phelps and Helms *could have* promised to sign.

We hold, therefore, that promissory estoppel is no bar to the statute of frauds under these facts.

Accordingly, we sustain issue two and hold that the statute of frauds applies and that any agreement between the parties concerning the M.T. Cole "A" lease is not enforceable. *See* Tex. Bus. & Com. Ann. § 26.01 (West 2009).

## B. Contract

In the alternative, Carpenter and Carpco contend that even were there an adequate description of the M.T. Cole "A" lease, there is legally and factually insufficient evidence of a contract. Our legal-sufficiency review must consider the evidence in the light most favorable to the fact-finder's decision and indulge every reasonable inference in support of that decision. *See City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). If the party attacking the legal sufficiency had the burden of proof on that issue, it must demonstrate that the evidence establishes all vital facts in support of that issue as a matter of law. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). Our review must first search the record for evidence that supports the finding and disregard all evidence to the contrary. *Id.* Absent evidence supportive of the finding, we then examine the entire record to determine if the contrary proposition was established as a matter of law and, if established conclusively, the issue must be sustained. *Id.* at 241–42. In reviewing a challenge to the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996) (citing *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986)); *Arias v. Brookstone, L.P.,* 265 S.W.3d 459, 468 (Tex.App.-Houston [1st Dist.] 2007, pet. denied).

Carpenter and Carpco allege there is no evidence in the e-mails or any other writing of the trial court's finding that "Plaintiffs would share, with other investors, in a pro rata ownership of one hundred percent ((100%)) of the M.T. Cole 'A' Lease until net revenues from the wells equaled the principal and interest due to the investors ('payout')." The January 13, 2005 letter affirmatively supports Carpenter and Carpco's argument that the investors were only offered ownership in Phase 1:

> Carpco Efficient Energy, Co., LLC is looking for investors to invest in the M.T. Cole "A" lease in Gregg County, Texas. The field consists of 48 wells drilled to approximately 3,000 feet into the Woodbine formation.
>
> . . . .
>
> ... Ideally, I would like to sell *a 1/3 interest* for $80,000 with interest payable @ 8% on the principal until the original investment is returned plus interest at which time the investors stake is converted into a 1/6 carried interest.

(Emphasis added.)

While we agree that a review of the record demonstrates no evidence in e-mails or other writing that the investors were offered a pro rata interest, Carpenter testified:

> [Counsel for Phelps and Helms] Now, in the e-mails and in all the testimony so far, you offered them a pro-rata ownership of 100 percent of the M.T. Cole "A" Lease until after payout.
>
> [Carpenter] *A.* Which then after payout—after payback and payout, they would be diluted by 50 percent?
>
> *Q.* Yes.
>
> *A.* I agree with that.
>
> [Counsel for Phelps and Helms] *Q.* Mr. Carpenter, when—before we took a

break for lunch, we were discussing some of the points that we have disagreement on. One of those points is you contend that Carpco Efficient Energy L.L.C. owned 100 percent of the working interest of the M.T. Cole "A" Lease, and then you were going to assign out percentages based on the amount of the money that you raised; is that correct?

[Carpenter] *A.* No, sir. I said that Carpco acquired the lease back in December, way before any of the money was received on March 1st and after. So before March 1st, Carpco owned 100 percent of the M.T. Cole "A" Lease.

*Q.* Okay. And you contend that you raised $72,000, right?

*A.* Well, I tried to raise $240,000 in three phases. I tried to raise $240,000. . . . But I only raised $72,000 for Phase 1.

*Q.* Okay. And based on the capital raise of $72,000, you contend that the Plaintiffs and other investors are entitled to a pro-rata share over 80, right instead of 72? This—

*A.* By pro rata, I'm—that's a confusing term to me.

*Q.* Okay

*A.* The percentages—I can deal with percentages.

*Q.* What percentage was Mr. Phelps to have after payout?

*A.* After he got his money back, he had the option to acquire 6 1/4 percent of Phase 1—of Phase 1.

*Q.* Okay. And you're basing that number—because you're putting his investment as a fraction over 80, and while the Plaintiffs, they're putting their investment as a fraction of over 72; is that correct?

*A.* Yes, sir.

*Q.* So that's a point of difference that we have in this lawsuit; is that correct?

*A.* We definitely disagree on that.

Phelps and Helms argue that Carpenter's initial answer, "I agree with that," is an admission that is legally sufficient to support the trial court's finding that "Plaintiffs would share, with other investors, in a pro rata ownership of one hundred percent ((100%)) of the M.T. Cole 'A' Lease." We do not agree this constitutes an admission. *City of Keller* reminds us that we do not literally look "only at that evidence that tends to support the judgment." 168 S.W.3d at 827. We must go further and determine whether the evidence could be considered by a reasonable factfinder. *Id.*

Carpenter's testimony, placed in context, concurred only with the statement, "Which then after payout—after payback and payout, they would be diluted by 50 percent?" While it can be inferred that he agreed with the statement, "you offered them a pro-rata ownership of 100 percent of the M.T. Cole "A" Lease," his later testimony on direct was that he was confused by the term "pro rata." Carpenter also testified that Carpco initially owned 100% of the lease and that he was seeking investments only in Phase 1 of the lease. Considering the context of Carpenter's testimony in light of the entire direct examination by Phelps and Helms's lawyer, a reasonable factfinder could not find that Carpenter testified he offered the investors a pro rata ownership of one hundred percent of the lease.

Accordingly, we hold that even were there an adequate description of the M.T. Cole "A" lease, the evidence is legally insufficient to establish a necessary term of that contract, and we sustain issue one.

## C. Partnership

■ In their third issue, Carpenter and Carpco contend the trial court erred in concluding that they were in a partnership with Phelps and Helms concerning the M.T. Cole "A" lease under the provisions of the former Texas Revised Partnership Act[3] and challenge the legal and factual sufficiency of the evidence to support the creation of any such partnership.

■ In *Ingram v. Deere*, the Texas Supreme Court discussed the formation of a partnership under the Texas Revised Partnership Act. 288 S.W.3d 886 (Tex. 2009). The Act requires no direct proof of the parties' intent to form a partnership. *Id.* at 895 (citing Act § 2.02). Rather, the Act lists the following factors:

> Factors indicating that persons have created a partnership include their:
>
> (1) receipt or right to receive a share of profits of the business;
>
> (2) expression of an intent to be partners in the business;
>
> (3) participation or right to participate in control of the business;
>
> (4) sharing or agreeing to share:
>
>> (A) losses of the business; or
>>
>> (B) liability for claims by third parties against the business; and
>
> (5) contributing or agreeing to contribute money or property to the business.

Act § 2.03(a). Unlike the common law, the Act does not require proof of all of the listed factors in order for a partnership to exist. *Ingram*, 288 S.W.3d at 896.

Moreover, the Act further sets out circumstances that *do not* conclusively establish a partnership:

> One of the following circumstances, by itself, does not indicate that a person is a partner in the business:
>
> (1) the receipt or right to receive a share of profits:
>
>> (A) as repayment of a debt, by installments or otherwise;
>>
>> (B) as payment of wages or other compensation to an employee or independent contractor;
>>
>> (C) as payment of rent;
>>
>> (D) as payment to a former partner, surviving spouse or representative of a deceased or disabled partner, or transferee of a partnership interest;
>>
>> (E) as payment of interest or other charge on a loan, regardless of whether the amount of payment varies with the profits of the business, and including a direct or indirect present or future ownership interest in collateral or rights to income, proceeds, or increase in value derived from collateral; or
>>
>> (F) as payment of consideration for the sale of a business or other property by installments or otherwise;
>
> (2) co-ownership of property, whether in the form of joint tenancy, tenancy in common, tenancy by the entireties, joint property, community property, or part ownership, whether combined with sharing of profits from the property;
>
> (3) sharing or having a right to share gross returns or revenues, regardless of whether the persons sharing the gross returns or revenues have a common or joint interest in the property from which the returns or revenues are derived; or

---

3. *See* Act of May 31, 1993, 73d Leg., R.S., ch. 917, § 1, 1993 Tex. Gen. Laws 3887, 3887 (Revised Statutes art. 6132b, since expired).

(4) ownership of mineral property under a joint operating agreement.

Act § 2.03(b).

In *Ingram*, the Texas Supreme Court stated that because section 2.03(a) factors function as a proxy for the common-law requirement of intent to form a partnership by identifying conduct logically suggestive of a collaboration of a business's purpose and resources to profit as partners, the issue of a partnership's existence should be decided upon consideration of all evidence bearing on the partnership factors. *Ingram*, 288 S.W.3d at 896. The court, therefore, while adopting a totality-of-the-circumstances test, recognized that an absence of any evidence of the factors will preclude recognition of a partnership under Texas law.

Here the alleged partnership existed for the same reason as the alleged contract—development of the M.T. Cole "A" lease. Phelps and Helms do not argue that the alleged partnership was formed for any reason other than to share in a pro rata working-interest ownership of the M.T. Cole "A" lease. The trial court's finding of a partnership therefore functions as an alternate ground to support the judgment.

■ Carpenter and Carpco have both asserted the statute of frauds and challenged the legal sufficiency of the evidence of a partnership. The law is clear that an interest in real estate cannot become a partnership asset unless the agreement concerning the property is in writing the same as any other contract concerning the sale of land. *See Pappas v. Gounaris*, 158 Tex. 355, 311 S.W.2d 644, 645–47 (1958) (applying former statute of frauds [4]). We have already determined that the statute of frauds applies and that any agreement between the parties concerning ownership of the M.T. Cole "A" lease is not enforceable. *See* TEX. BUS & COM. ANN. § 26.01 (West 2009). The question remains whether the trial court's finding that "Plaintiffs and Defendants are partners in the M.T. Cole 'A' Lease" is supported by legally-or factually-sufficient evidence if the agreement concerning the lease is unenforceable.

Absent an enforceable agreement concerning the M.T. Cole "A" lease, we hold there is no evidence of the factors enumerated in section 2.03(a) of the Act of an intent of the parties to create a partnership for any business purpose other than the purpose that is unenforceable under the statute of frauds. There is no evidence that Phelps and Helms had a right to receive a share of profits from any business other than the development of the M.T. Cole "A" lease and there is no evidence of a written agreement to share any specific percentage of profits with respect to any specific ownership interest in the lease. There is no evidence of an intent to be partners in anything other the development of the field, which would require the establishment of a joint venture and a joint operating agreement, both of which are subject to the statute of frauds. There is no evidence of an agreement to share in the business liabilities of the lease operations. Indeed, there is only an agreement to contribute money to purchase an unspecified working interest in the field that was never reduced to writing. Accordingly, we sustain issue three.

### D. Damages and attorney's fees

■ In their fourth and six issues, Carpenter and Carpco challenge the award of damages and attorney's fees. Because the bases of liability—breach of contract and breach of fiduciary duty by a part-

4. Revised Statutes, 39th Leg., R.S., § 1, art. 3995, 1925 Tex.Rev.Stat. 2, 1084, *repealed by*

Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 4(a), 2343,2619.

ner—have been negated by our previous determination of no enforceable agreement or partnership, we hold the trial court erred in awarding damages and attorney's fees. *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex.1995) (holding attorney's fees not generally recoverable unless party prevails under cause of action for which attorney's fees are recoverable and damages are recovered); *S. Pine Lumber Co. v. Andrade*, 132 Tex. 372, 124 S.W.2d 334, 335 (1939) (holding damage award immaterial when no liability). Accordingly, we sustain issues four and six.[5]

### Conclusion

We reverse the judgment of the trial court and render judgment that Phelps and Helms take nothing.

---

**5.** Because of our determination on liability and damages, we also do not reach Carpenter and Carpco's fifth issue challenging the trial court's conclusion that Carpenter and Carpco are alter egos.