Opinion issued March
29, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00230-CV

———————————

Richard Sewing, Appellant

V.

Steven Wayne Bowman, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM
C. BOWMAN, Appellee



 



 

On Appeal from the 270th Judicial
District Court

Harris County, Texas



Trial Court Case No. 2008-32360

 



 

DISSENTING
OPINION

While the
facts of this case engender sympathy for Bowman’s father, who paid his friend
Richard Sewing over $200,000 but was not paid his money back, the statute of
frauds bars enforcement of the alleged oral contract, and Bowman failed to
prove any other basis for recovery of damages or attorney’s fees. I, therefore,
respectfully dissent. 

The Statute of Frauds
Bars Bowman’s Recovery

The Court properly
distinguishes between (1) an oral partnership agreement to transfer an ownership
interest in land to a partner or the partnership—an agreement that violates the statute
of frauds—and (2) an oral partnership agreement to develop land for resale and share in the
sale profits without transferring an ownership interest in the land—an agreement that does not. Compare Beverly Found. v. W.W. Lynch, 301 S.W.3d 734, 740 (Tex. App.—Amarillo
2009, no pet.) (holding that statute of frauds barred alleged joint venture
agreement to convey working interest in mineral lease to joint venture); Texas
Nom Ltd. P’ships v. Akuna Matata Invs., Ltd., No. 04-04-00447-CV, 2005 WL
159459, at *5 (Tex. App.—San Antonio 2005 pet. denied) (mem. op.) (holding that
statute of frauds barred oral partnership agreement giving partnership interest
in oil and gas leases), with Wiley v. Bertelsen, 770 S.W.2d 878, 881 (Tex. App.—Texarkana 1989, no pet.) (“The
statute of frauds does not apply to an agreement to pay a certain sum of money
out of the proceeds of a future sale of land.”); Ward v. Crow, 476 S.W.2d 77, 80 (Tex. App.—El Paso
1972, no writ) (“Oral agreements to share profits arising from the purchase and
sale of real estate can be construed to be binding and not as contracts for a
transfer or assignment of interest in real estate.”).[1] But, contrary to the Court’s holding, the
agreement alleged at trial and found by the jury falls within the first
category rather than the second, and the damages Bowman recovered depend on that
unenforceable oral agreement. 

A.      The agreement Bowman pled and proved at
trial was for a one-half interest in land

 

The distinguishing
factor between property-related agreements barred by the statute of frauds and
those that are not is whether the agreement provides for the transfer of an
interest in land from one party to another. See
Berne v. Keith, 361 S.W.2d
592, 597 (Tex. App.—Houston 1962, writ ref’d n.r.e.) (“an agreement to share in
the profits of contemplated speculative deals in real estate simply does not
involve the transfer of real estate, or an interest in real estate, within the
meaning of the Statute of Frauds”);[2]
Mangum v. Turner, 255 S.W.3d 223, 227 (Tex. App.—Waco 2008, pet. denied)
(“Generally, the statute of frauds applies to an oral agreement when ‘the
performance promised requires an act that will transfer property in land.’”)
(quoting Palmer v. Fuqua, 641
F.2d 1146, 1158 (5th Cir. 1981)). A partnership agreement that requires the transfer of real
estate to the partnership violates the statute of frauds because “an interest
in real estate cannot become a partnership asset unless the agreement
concerning the property is in writing the same as any other contract concerning
the sale of land.” Carpenter
v. Phelps, 01-09-00203-CV,
2011 WL 1233312, at *8 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.).

On appeal, Bowman
contends that his father’s oral agreement with Sewing to develop land was not barred
by the statute of frauds because he is “not seeking a transfer of any interest
in the lands,” but rather, “an accounting of a share in the profits as
compensation for services rendered in [the] project.” Bowman maintains that
Sewing and his father formed an oral partnership “to redevelop and sell
property” owned by Sewing and that their agreement did not include “convey[ing]
title to the property but merely establish[ing] a venture to profit from its
sale.” In other words, according to Bowman, the parties’ agreement does not run
afoul of the statute of frauds because it was not intended to transfer the
properties’ ownership; the agreement was that he would share one-half in any
profit from the properties’ sale. But the agreement Bowman describes on appeal
is not the agreement he asserted in his pleadings and proved at trial, nor is
it the agreement upon which the jury based its damages award.[3]
 

In his
pleadings, Bowman alleged that his father and Sewing entered
into an agreement under which Bowman’s father provided $260,000 “as capital for
the purpose of acquiring and
rehabilitating” the Chenevert and Wentworth properties and that the agreement
“created a partnership in that the parties associated as co-owners to carry on a business for profit.” (emphasis added). He
repeatedly asserted that his father and Sewing “would each own 50% of the
properties” under their agreement and that the $260,000 investment was to be
used for the “purchase” of the properties. Consistent with his pleadings, in his opening statement, Bowman’s
counsel told the jury that plaintiff’s exhibit 10C[4]
“lays out what the partnership agreement is,” showing the Chenevert and
Wentworth properties as the partnership’s “first two acquisitions.” He stated,
“Those are the properties that Mr. Sewing is going to contribute to this
partnership and he’s saying [in exhibit 10C] that when he gave the partnership
– when he contributed to the partnership they were worth $300,000 each for a
total of $600,000. That is going to be – was Mr. Sewing’s contribution to this
partnership.” Bowman’s evidence at trial conformed to this theory of the case.[5]
And in his closing argument, Bowman’s counsel continued this theme, stressing
evidence of an agreement for “50 percent ownership,” noting that this was
“consistent with the plaintiff’s case,” and pointing to plaintiff’s exhibits
discussing a “half interest in [the Chenevert and Wentworth properties.]” At
Bowman’s urging, the jury found that the parties “formed
a partnership regarding the properties”—without any reference to “services
rendered” or a right to share in sales profits independent of ownership.[6]

On appeal,
Bowman relies largely on Sewing’s testimony to support his re-framing of the
agreement as one for a share of profits on the sale of the properties rather
than one for an interest in the land itself. But Sewing’s testimony does not
support this description of the parties’ agreement. Sewing testified that he
and Bowman’s father discussed an agreement to enter a partnership for joint
ownership of the properties but that they never consummated that deal because
their plans changed when Bowman’s father grew ill.[7]
This testimony expressly relates to a proposed agreement to “acquir[e] land”
and for Bowman’s father to “buy[] the land.” It does not support Bowman’s new
characterization of the parties’ agreement on appeal, and he points to no
evidence of his own that does. Absent such evidence, we must presume that the
partnership agreement found by the jury was the one Bowman proved at trial—an
agreement to form a partnership that would own the Chenevert and Wentworth
properties. Because this agreement requires the transfer of an ownership
interest in land from Sewing to the partnership, its enforcement is barred by
the statute of frauds. See Tex. Bus.
& Com. Code Ann.
§§ 26.01(a), (b)(4) (Vernon 2009); see
also Beverly Found., 301
S.W.3d at 740; Texas Nom, 2005 WL 159459, at *5.
 

B.      The jury’s damage award depends on the
unenforceable oral agreement to transfer an ownership interest in land

 

Even if Bowman had put on evidence of an agreement to form a
partnership under which Sewing would retain full ownership of the Chenevert and
Wentworth properties but Sewing and Bowman’s father would share in “profits”
made on the sale of these properties in exchange for “services rendered,”
Bowman’s recovery would fail because that agreement does not provide a basis
for the jury’s damages award. The jury did not award damages based on a
calculation of profits or payments owed for services rendered; it awarded
damages based on “the value of William C. Bowman’s interest in the partnership
on the date of his death.” The jury placed that value at $231,743.61.

The only
evidence to support this value is the evidence of the Chenevert and Wentworth
properties’ worth. Based on the evidence he presented at trial, Bowman informed
the jury that the combined value of the Chenevert and Wentworth properties,
minus the amount owed on them, was $1,017,000, and he asked them to “take half
of that, ladies and gentlemen, and that is the value of the partnership.” He
further suggested that the jury could reduce that value by some of the expenses
on the property claimed by Sewing, the reliability of which he contested.[8] If the partnership owned the
Chenevert and Wentworth properties, as Bowman argued before the jury, Bowman
would be entitled to recover on his father’s interest in the partnership based
on the properties’ value. But the partnership did not own the property because
the statute of frauds bars the transfer of an interest in the properties from
Sewing to the partnership in the absence of a written agreement. See Tex. Bus.
& Com. Code Ann.
§§ 26.01(a), (b)(4).

Bowman attempts
to sidestep the statute of frauds on appeal by arguing that the jury’s award
reflects not the value of an ownership interest in land but the value of a
“venture to profit from [the properties’] sale”—i.e., “an
accounting of [his father’s] share in the profits” from the sale of Chenevert
and Wentworth properties. But Bowman did not put on evidence of the value of
any “profits” on the sale of these properties—his damages evidence centered on
the value of the property that he alleged the partners jointly owned. For
example, with respect to the Wentworth property, Bowman sought $390,000—the
amount for which the property sold in 2003. “Profits,” however, do not include
all proceeds on a sale; they are the net of the proceeds and the expenses,
including the original purchase price. Bowman did not present any evidence of
the amount Sewing paid for the Wentworth property. While Bowman was free to
contest Sewing’s evidence of expenses on the property, it was uncontroverted
that Sewing “bought” the Wentworth property. Without evidence of the purchase
price, the jury could not determine the value of any profits on resale. See Texaco, Inc. v. Pham, 137 S.W.3d
763, 771 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (observing that recovery
of lost profits must be based on net profits, accounting for all expenses,
rather than gross profits); see also Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84 (Tex. 1992)
(stating that testimony of amount of expected income that would have been
received was not the correct measure of damages for lost profits). 

The Court endeavors
to avoid this issue by substituting the term “proceeds” for “profits”: “Bowman’s claim for redemption of
his partnership interest may include an interest in the proceeds from the sale
of the two properties without resulting in a transfer of interest in the two
properties to him.” Slip op. at 15. While an agreement to share in “proceeds”
rather than “profits” would not require an accounting for the original purchase
price and expenses, there was no evidence of such an agreement.[9] Nor did the jury find such an
agreement. Although the jury made specific findings of a partnership agreement
and of the terms of the parties’ agreement, the jury’s findings included no
term relating to the proceeds, rather than profits, on the sale of the
properties.

C.      Sewing did not execute a legally
sufficient writing 

Bowman contends in the alternative that Sewing’s December 8,
2004 letter satisfies the statute of frauds such that the parties’ agreement
effectively transferred a one-half interest in the Chenevert and Wentworth
properties to Bowman’s father. In the letter, Sewing informs Bowman, “I am
having the legal document prepared per our discussion: 50% ownership.” 

To satisfy the requirement that a written agreement to
transfer land must contain a sufficient description of the land, Bowman makes
two contentions. First, Bowman contends that the evidence demonstrates that a
legal description was enclosed with this letter. The evidence did not establish
this assertion. The property description was a separate exhibit. It was not dated
and there was no oral testimony that it was enclosed with the December 8
letter.[10] 

Second, Bowman asserts that the street address of the
properties is specified in a worksheet prepared by Sewing, which was enclosed
with the December 8 letter, and that a property description based on a street
address is sufficient. The December 8 letter refers to an undated “payment
history and balance.” Bowman contends that this is a reference to the
worksheet, titled “Bowman-Sewing Transactions.” Sewing responds that this
reference is not “explicitly” to the worksheet. The worksheet reflects a history
of payments and the “balance” owed by Bowman. The reference in the letter is
sufficiently explicit to implicate the worksheet. The worksheet, however, does
not provide a sufficient description of the land in question. 

An agreement to transfer an interest in real estate “must furnish the data to identify the
property with reasonable certainty.” Duncan v. F-Star Mgmt., L.L.C., 281
S.W.3d 474, 478 (Tex. App.—El Paso 2008, pet. denied). “A description of real
property must be reasonably certain so that a
party familiar with the locality could identify the property to the
exclusion of other property.” Dunworth Real Estate Co. v. Chavez Props.,
No. 04-07-00237-CV, 2008 WL 36222, at *4 (Tex. App.—San Antonio Jan. 2, 2008,
no pet.) (mem. op.) (emphasis added). But the worksheet does not identify the locality;
it provides a partial street address without any reference to a city, county,
zip code or state, which is particularly problematic here where the parties
resided in different states. Even the street address is incomplete, failing to
specify whether the named street is a “street,” “avenue,” “road,” “lane,”
“drive,” “boulevard,” or the like.[11] Moreover, the worksheet grants Bowman
a one-half interest in the properties in exchange for $300,000. It is
undisputed that Bowman did not pay Sewing the full $300,000.

Thus, Bowman did not
present evidence of a written agreement sufficient to satisfy the statue of
frauds.

D.      Bowman cannot avoid the statute of frauds
under a partial performance exception

Bowman further contends that his father’s partial
performance of the parties’ agreement, through his payments of over $200,000,
satisfies the statute of frauds. “Under the partial
performance exception to the statute of frauds, contracts that have been partly
performed, but do not meet the requirements of the statute of frauds, may be
enforced in equity if denial of enforcement would amount to a virtual fraud.” Resendez v. Maloney, No. 01-08-00954-CV, 2010 WL 5395674, at
*7 (Tex. App.—Houston [1st Dist.] Dec. 30, 2010, pet. denied) (mem. op.) (quoting
Exxon Corp. v. Breezevale Ltd., 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002,
pet. denied)). Virtual fraud occurs when
“because of his reliance on the contract, a party has suffered a substantial detriment for which he has no adequate remedy, and the
other party would reap an unearned benefit if permitted to invoke the statute
of frauds.” Id. (citing Exxon, 82 S.W.3d at 439). But Bowman did not
plead partial performance or obtain a jury finding on this claim. And the damages
for partial performance are reliance damages, which Bowman did not seek. See Exxon,
82 S.W.3d at 441. 

Thus, Bowman did not establish the partial performance
exception to the statute of frauds.

E.      Conclusion

          The oral agreement that Bowman proved
and was awarded damages on at trial is barred by the statute of frauds. Bowman
proved no other agreement and no other basis for the jury’s damages award. The
statute of frauds therefore bars his recovery.

Attorney’s fees

Because
Bowman was not entitled to recover the damages the jury awarded him and did not
seek or recover any other relief, he was not the prevailing party. He therefore
may not recover attorney’s fees under chapter 38 of the Civil  Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008); see also MBM Fin. Corp. v. Woodlands Operating
Co., L.P., 292 S.W.3d 660, 666
(Tex. 2009) (“To recover fees under [chapter 38], a litigant must do two
things: (1) prevail on a breach of contract claim, and (2) recover damages.”); Mustang
Pipeline Co., Inc. v. Driver Pipeline Co., Inc., 134 S.W.3d 195, 201 (Tex.
2004) (“While Mustang did have a valid claim against Driver, it was not
entitled to recover attorney’s fees because it was not awarded damages on its
breach of contract claim.”).

Conclusion

For
these reasons, I respectfully dissent.

 

 

Harvey Brown

                                                                   Justice


 

Panel consists of Justices
Jennings, Higley, and Brown.

Justice Brown, dissenting.

 











[1]           See also Pappas v. Gounaris,
158 Tex. 355, 359, 311 S.W.2d 644, 646 (1958) (“land owned by a prospective
partner at the time of the formation of the partnership does not become a
partnership asset by a mere oral agreement of partnership even though such was
the intention of the parties; in other words, in order to place in the
partnership the title to property owned by one partner at the formation of the
partnership, or to make such property a partnership asset, the agreement must
be in writing the same as any other contract for the sale of land”); City
Products Corp. v. Berman, 610 S.W.2d 446, 449 (Tex. 1980) (“A partnership
to deal with land, for example, may exist between persons when only some of
them own the land. Some may furnish the use of property, and the other persons’
membership in the partnership may consist of their contribution of services. Ownership of realty is not an
essential element of every partnership.”).





[2]           In Berne, the plaintiff was “not seeking a transfer of any interest in” the
defendant’s real estate. 361 S.W.2d at 597. Instead, he sought “an accounting
of a share in the profits as compensation for services rendered in a project
involving speculation in real property which he asserts became due him upon
completion of the project.” Id. Here
the damages sought by Bowman are not measured by profits or compensation but
the value of the land. 





[3]           The
Court asserts that this dissent improperly conflates Bowman’s partnership claim
with his breach of contract claim, noting that these are two distinct claims
and the jury was free to reject one while accepting the other. I agree with the
Court that partnership claims and breach of contract claims are distinct legal
theories of recovery and that Bowman could have pleaded and proved a breach of
an agreement to transfer land to a partnership—enforcement of which is barred by the statute of frauds—and yet separately proved a partnership between the
parties that did not require the transfer of land—enforcement of which is not
barred by the statute of frauds. But
Bowman did not plead or prove a partnership between the parties that did not
require the transfer of land. As detailed herein, he pleaded and proved an
agreement to be partners in the co-ownership of the Chenevert and Wentworth
properties. Because these properties were wholly owned by Sewing, the agreed
upon partnership could not proceed without the transfer of an ownership
interest in those properties. Moreover, the only evidence Bowman presented on
damages requires the jury to base the value of the partnership interest on the
value of the properties—not the value of any
work performed on the properties or any proceeds from the sale of the
properties, but the value of the properties themselves. These damages presume
that the partnership had an interest in the properties themselves, but the
statute of frauds bars such an interest.





[4]           Plaintiff’s
exhibit 10C, titled “Bowman-Sewing Property Transactions,” lists monetary
contributions made by Bowman’s father and Sewing and identifies the Chenevert
and Wentworth properties as “acquisitions.” It shows that Bowman’s father owed
$76,725 to reach a proposed investment of $300,000, identifying this amount as
the “Bowman balance for 1/2 interest in [the Chenevert and Wentworth
properties.]”





[5]           For
example, Bowman’s first witness, Craig LeVesseur, testified that his
understanding was that Bowman’s father paid the funds to Sewing “to acquire
ownership in the Chenevert property and Wentworth property[.]” Bowman also
relied on LeVesseur’s notes and letters, which referred to an “investment in
Houston land/homes” and a “real property investment opportunity” in Houston.
Similarly, Bowman relied heavily on plaintiff’s exhibit 10C and an earlier
version of the same document, plaintiff’s exhibit 2, both of which provided for
Bowman to purchase a “1/2 interest in [the properties.]”





[6]           The jury also
found that the parties agreed that Bowman would purchase a “one half interest,
or 50% ownership in” the Chenevert and Wentworth properties for $300,000 and to
develop townhomes on those properties “to make a profit,” but that Sewing did
not breach the parties’ agreement.





[7]           Bowman
argues that Sewing’s testimony that Bowman was “buying into something that’s
worth $600,000 . . . more naturally signifies acquiring an interest in a joint
venture and funding its project rather than acquiring land, which one ‘buys’
but does not ‘buy into.’” Taken in context, however, it is clear that the
“something” Sewing is referring to is the property. Sewing explained, “I’m
selling him half of something I already own.” Sewing owned the two properties;
he did not “own” a joint venture. And the documents drafted by Sewing, on which
Bowman relied extensively at trial, provided for Bowman to obtain a “1/2
interest in 4810 Chenevert and 1718 Wentworth,” not a one-half interest in a
joint venture. Bowman’s counsel described the agreement as an “investment . . .
to get the 50 percent ownership,” and Sewing responded that “to become 50
percent, you’re buying the land, that’s where we’re starting . . . .”

Bowman
also seeks to isolate one portion of Sewing’s testimony that he agreed with
Bowman to establish a partnership to develop and sell townhouses on the
property. Again, we cannot ignore the context of his statement. There is no evidence
that the agreement was divisible. Therefore, we cannot ignore the remainder of
Sewing’s testimony about the agreement in which he testified, without
equivocation, that “the only thing [Bowman’s] really buying is land to be
developed,” that the transaction involved Bowman “buying the land,” and that
Sewing was selling Bowman “half of something I already own” (i.e. the land). 





[8]           In his expense
summaries, Sewing claimed $448,273.34 in expenses on the Chenevert property and
$108,224.26 in expenses on the Wentworth property.





[9]           The
few references to the word “proceeds” in the witness testimony are unrelated to
the existence of an agreement: (1) when asked what types of services he
provided, Bowman’s father’s financial planner referenced some proceeds Bowman’s
father was expecting from a lawsuit; (2) Sewing sometimes referenced the amount
Bowman’s father had paid to him as “investment proceeds”; and (3) when asked
whether any of the proceeds from the sale of the Chenevert property went to
Bowman’s father, Sewing’s wife answered, “No.” Nor did any of the evidence
refer to an agreement to share in “revenues,” “income,” or other terms with a
similar meaning.





[10]         Sewing
testified that he sent the property description to Bowman but he could not
recall when. 

 





[11]         In the Houston area alone, there is a Wentworth Street, a
Wentworth Lane, and a Wentworth Court. See
International-Great N. R. Co. v.
Reagan, 121 Tex. 233, 49 S.W.2d 414, 416 (1932) (taking judicial
notice of maps in public record); see
also City of Austin v. Leggett,
257 S.W.3d 456, 466 (Tex. App.—Austin 2008, pet. denied) (consulting satellite
maps available on google maps website).